**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSHUA G. STEGEMANN,**

                                  **Plaintiff,**

        **vs.**                                              **1:15-CV-21**


**RENSSELAER COUNTY SHERIFF'S**
**OFFICE, et al.,**

                                  **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**


**DECISION & ORDER**

        Before the Court are various Defendants' motions to dismiss either Plaintiff's

Amended Complaint or the Plaintiff's proposed Second Amended Complaint.  See dkt.

#s 57, 79, 145, 148, 150, 158.  The parties have briefed the issues and the Court has

determined to resolve the matter without oral argument.  For the reasons stated below,

the Defendants' motions will be granted.

**I.      BACKGROUND**

        This case has a complicated procedural history.  Plaintiff filed his original

Complaint, which he brought pursuant to Bivens v. Six Unknown Federal Narcotics

Agents, 403 U.S. 388 (1971), on January 8, 2015.  See dkt. # 1.  Plaintiff alleged

violations of his constitutional rights by Defendants, various police agencies and

departments, law enforcement officials, and cellular telephone providers in connection

with a search of his residence pursuant to a drug trafficking investigation that eventually

led to Plaintiff's conviction and prison sentence.  Plaintiff alleged that the search of his property violated his Fourth and Fifth Amendment rights.  Id.  He also alleged that Defendants' destruction of his property violated his Fourteenth Amendment rights. Plaintiff also filed a motion for leave to proceed *in forma pauperis*.  See dkt. # 2.

Magistrate Judge Christian F. Hummel gave the Complaint an initial review pursuant to 28 U.S.C. § 1915(e) and recommended to the Court that the Complaint be dismissed without prejudice.  See dkt. # 5.  With reference to Plaintiff's Fourth Amendment claims, Magistrate Judge Hummel concluded that Plaintiff's claims were barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), because if Plaintiff were to prevail on his claims in this matter he would necessarily call into question his prosecution in the criminal matter.  Id. at 5-7.  Because the criminal case was ongoing, Magistrate Judge Hummel recommended that the Court dismiss the action without prejudice until such time as the criminal matter was resolved.  Id. at 7.   The Magistrate Judge also recommended that the Court dismiss Plaintiff's Fourteenth Amendment claims, since an adequate state procedure existed to address any damage to his property from the search.  Id. at 8.  Magistrate Judge Hummel also recommended dismissal of Plaintiff's state-law claims.   Id. at 9.  The Court adopted the Report-Recommendation and dismissed the case, with prejudice.  See dkt. # 7.

Plaintiff appealed, and the Court of Appeals vacated the Court's opinion and remanded the case.  See dkt. # 13.  The Court of Appeals found the Court erred in applying the Heck bar to a case where judgment had not yet been entered.  Id. at 9. The Court also remanded the case for the Court to consider whether Plaintiff's destruction-of-property claims under the Fourth and Fifth Amendments could stand.  Id.

2

The mandate also directed the Court to consider whether Plaintiff's state-law claims were subject to supplemental jurisdiction.  Id. at 10-11.

On remand, Magistrate Judge Hummel again reviewed the Complaint and issued a Report-Recommendation.  See dkt. # 19.  The Court considered Plaintiff's objections to the Magistrate Judge's recommendations and adopted the Report-Recommendation in part.  See dkt. # 23.  The Court dismissed all of Plaintiff's claims except for those seeking monetary recovery for the indiscriminate destruction of property without prejudice to refiling if Plaintiff could overcome the Heck bar.  Id.  The Court recommitted the case to the Magistrate Judge for recommendations as to whether Plaintiff had pleaded legally viable claims under the Fourth and/or Fifth Amendments for monetary recovery for property destruction, and for whether the Court should exercise supplemental jurisdiction over Plaintiff's state-law claims.  Id.

Magistrate Judge Hummel then issued another Report-Recommendation.  See dkt. # 24.  That Report-Recommendation suggested that Plaintiff's Fourth Amendment property damage claims proceed, that his claims brought pursuant to Fifth Amendment, 18 U.S.C. §§ 2510-2522, 2701, et seq., and 3121-3127, be dismissed without prejudice, and that his state-law claims be dismissed without prejudice as well.  Id. Magistrate Judge Hummel noted that all other claims were dismissed "without prejudice to refiling in the event Plaintiff can overcome the 'favorable termination' rule established" in Heck.  The Court adopted this Report-Recommendation.  See dkt. # 26.

After the Court denied Plaintiff's motion for reconsideration, see dkt. # 29, Plaintiff began the process of having his Complaint served.  Before completing service, Plaintiff filed an Amended Complaint.  See dkt. # 38.  Defendants Fulton County and

Fulton County Sheriff's Office filed a motion to dismiss that Amended Complaint.  See dkt. # 57.   Defendants Air National Guard, Chris Clifford, "Dan" Kiley, New York State Police, New York State Police SORT, and Richard Sloma filed a motion to dismiss the Amended Complaint for lack of personal jurisdiction and failure to state a claim.  See dkt. # 79.  Defendant AT&T filed a motion to dismiss the Complaint as well.  See dkt. # 91.  Defendants Glenn Civello, Glenn F. Decker, John Mazzeo, Pittsfield Police Department, Tyrone Price, and Michael Wynn filed a motion to dismiss the Amended Complaint on September 26, 2017.  See dkt. # 94.  On September 28, 2017, Defendants Christopher Perilli, Warren County, Warren County Sheriff's Office, and Nathan York also moved to dismiss the Amended Complaint.  See dkt. # 97. Defendants Berkshire County, Berkshire County District Attorney's Office, Bershire County Sheriff's Office, Thomas Bowler, David F. Capeless, Scott Colbert, David Brian Foley, Richard Locke, Massachusetts State Police, and Rick Smith likewise moved to dismiss the Amended Complaint on October 2, 2017.  See dkt. # 114.

Plaintiff responded to these motions, but he also filed a Second Amended Complaint on October 12, 2017.  See dkt. # 134.  Plaintiff did not seek leave of Court to file a Second Amended Complaint, nor did he file the Second Amended Complaint in lieu of responding to the Defendants' earlier motions.

Several defendants moved to dismiss this Second Amended Complaint.  Some of these Defendants had moved to dismiss the Amended Complaint too.  Defendants Glenn Civello, Glenn F. Decker, John Mazzeo, Pittsfield Police Department, Tyrone Price, and Michael Wynn filed such a motion.  See dkt. # 145.  So did AT&T Wireless. See dkt. # 148.  Jack Mahar also filed a motion to dismiss.  See dkt. # 150.  Defendant

4

Cellco Parnership also moved to dismiss this Second Amended Complaint.  See dkt. # 158.  The parties briefed these motions as well.

Plaintiff has also filed a number of requests for entry of default and motions seeking default judgment against various Defendants.  See dkt. #s 83, 88, 100, 102, 116, 117, 118, 119, 152, 153.  The Court has denied some of those motions, and others are still pending.  The Court will address those motions after disposing of the motions to dismiss.

## II.    LEGAL STANDARD

Numerous Defendants have moved to dismiss the Complaint for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).  When, as here, the Plaintiff proceeds pro se, the Court "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'"  Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir.

2000)).  "This is especially true when dealing with pro se complaints alleging civil rights violations."  Id.

## III.   ANALYSIS

### A.   Status of the Complaint

As explained above, the motions to dismiss before the Court address two different versions of Plaintiff's Complaint.  Plaintiff filed an Amended Complaint before any Defendant answered the Complaint, and then filed a Second Amended Complaint after some of the Defendants were served and filed motions to dismiss.  Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after a service of a motion under rule 12(b), (e), or (f), whichever is earlier."  FED. R. CIV. P. 15(a)(1)(A-B).  In other cases where a party seeks to amend a pleading, the party may do so "only with the opposing party's written consent or the court's leave."  FED. R. CIV. P. 15(a)(2).  "The court should freely give leave when justice so requires."  Id.  Plaintiff's Second Amended Complaint falls under the latter of these rules.  Plaintiff neither sought consent from the opposing parties nor leave of the Court.

In addition to failing to move for leave to amend his pleading, Plaintiff also failed to follow the local rules with respect to filing a second amended pleading.  The Northern District of New York's Local Rules proscribe the procedure for obtaining leave of court for filing an amended pleading.   Local Rule 7.1(a)(4) provides that "[a] party moving to amend a pleading pursuant to Fed. R. Civ. P. 14, 15, 19-22 must attach an unsigned

copy of the proposed pleading to its motion papers." N.Y.N.D. L.R. 7.1(a)(4). A party is to "set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading, either through the submission of a redline/strikeout version of the pleading sought to be amended or through other equivalent means." Id. Plaintiff simply filed a Second Amended Pleading.

The Defendants could have moved to strike the pleading in question for failing to abide by this Rule, but instead some Defendants simply responded to that pleading with motions to dismiss. If the Plaintiff had moved for leave to file an amended pleading, the Court would have considered a number of factors in evaluating that motion. The Federal Rules of Civil Procedure provide that "leave to amend the pleadings should be 'freely give[n] . . . when justice so requires.'" AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010)). Generally, courts in this Circuit have permitted "'a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" Id. (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d. Cir. 1993)). Still, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)).

Because Plaintiff did not file for leave to file an amended complaint, the Court could dismiss the proposed Second Amended Complaint with leave to re-file. At the same time, as no Defendants sought to have the proposed Second Amended Complaint dismissed as improperly filed, but instead for failure to state a claim, the

7

Court will instead assume that Defendants assert no prejudice from that filing and instead assert that Plaintiff's prosed filing is futile.  Some Defendants apparently prefer to have their motions concerning the First Amended Complaint ruled upon.  In an effort to resolve the matter efficiently, the Court will consider the Defendants' motions as they relate to the First Amended Complaint and then, as necessary, will address the motions related to the proposed Second Amended Complaint.  The Court will determine, based on those motions, whether permitting filing of the Second Amended Complaint would be futile.  The Court finds this procedure the most efficient way to resolve the matter while still making all inferences in Plaintiff's favor and affording him all the leeway due an unrepresented plaintiff.

**B.    First Amended Complaint**

Several parties have filed a motion to dismiss the First Amended Complaint, citing various grounds.  The Court will address each in turn.

**i.    Fulton County Sheriff's Office and Fulton County**

Defendants Fulton County Sheriff's Office filed a motion to dismiss the First Amended Complaint.  See dkt. # 57.  Fulton County argues that Plaintiff has failed to allege that his injuries were caused by a municipal policy and/or custom, and that the Sheriff's Office is a municipal entity and cannot be liable as a agency of the county.

Plaintiff's Amended Complaint alleges that between April 30 and May 2, 2013, Defendant Fulton County Sheriff's Office–along with other law enforcement agencies–"unlawfully searched and seized Stegemann's person property, vehicles, and residence."  Amended Complaint, dkt. # 38, at ¶ 54.  During those three days, the

defendant agencies "destroyed Stegemann's residence and property" when they "tore down interior walls and ceilings, ripped apart and scattered personal belongings, seized" personal property, "tore apart patio walkways, and rock gardens, bulldozed" structures and landscaping on the property, "excavated deep holes in the lawns and grounds," and destroyed other plants and property.  Id.  Defendants, Plaintiff claims, destroyed this property without authorization and in violation of the United States Constitution.  Id.  Among the Defendants involved in this illegal activity were the "Fulton County Sheriff and K9 officers."  Id. at ¶ 56.

Plaintiff argues that the Fulton County Sheriff's K9 deputies who executed the search at Plaintiff's property did so as part of their training in police procedures.  These officers, he claims, were not trained properly by the Fulton County defendants, and that this lack of training violated his rights during the search.  He argues that the Fulton County officers were undergoing training by Rensselaer County officials.  Moreover, their actions were a result of a training regime put in place by the Fulton County Sheriff, who is liable for Plaintiff's injuries as a policymaker.

Plaintiff attempts to state claims against a municipality–Fulton County–and a municipal agency–the Fulton County Sheriff's Office.  Municipal liability is limited under Section 1983 by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  In that case, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).  To prevail, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Bd. of County Commr's v. Brown, 520 U.S. 397, 403 (1997).  "A

government's official policy may be 'made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 142 (2d Cir. 1999) (quoting Monell, 436 U.S. at 694). Plaintiff must demonstrate that his rights were violated "pursuant to a governmental custom, policy, ordinance, regulation, or decision." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Plaintiff must show "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Id.

Plaintiff's Amended Complaint contains no allegations that his injuries were the result of a municipal policy and/or custom. The Amended Complaint simply contains broad allegations that members of the municipal police force participated in unconstitutional activity against Plaintiff. The Court has previously determined that Plaintiff's allegation of unconstitutional property damage is sufficient to survive an initial screening. Plaintiff's Amended Complaint does allege property damage, but does not allege that the property damage came as a result of any municipal policy or custom. The motion will therefore be granted in this respect. Similarly, Plaintiff brings claims against the Fulton County Sheriff's department. He likewise offers no allegation that the Defendant department violated his rights pursuant to a policy or custom, and has not stated a claim. Moreover, since "New York law governs the capacity of the police department to sue or be sued" under Section 1983, and "[i]n New York, [police] departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the" county. Loria v. Irondequoit, 775 F.2d 599, 606 (W.D.N.Y. 1990). Thus, any claims against the Fulton County Sheriff's Department are dismissed as well.

10

Plaintiff also appears to argue that Fulton County is liable because of a failure to train K9 officers. "Municipal liability may . . . be premised on a failure to train employees when inadequate training 'reflects deliberate indifference to . . . constitutional rights.'" Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 440 (2d Cir. 2009) (quoting City of Canton v. Harris, 489 U.S. 378, 392 (1989). To demonstrate such deliberate indifference, the plaintiff must demonstrate "(1) 'that a policymaker knows to a moral certainty that her employees will confront a given situation'; (2) 'that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation'; (3) 'that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights.'" Id. (quoting Walking v. City of New York, 974 F.2d 298, 297-98 (2d Cir. 1992)). "'[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents.'" Id. (quoting Vann v. City of New York, 72 F.3d 1040,1049 (2d Cir. 1995)).

Plaintiff's Complaint contains no such allegations, and Plaintiff's argument here does not save him from Defendants' motion. The Amended Complaint contains no allegations about training, nor any allegations that an official who performed the training was deliberately indifferent to the potential for unconstitutional injury as a result of that training. In any case, Plaintiff here appears to have alleged that the Fulton County Sheriff somehow participated in the training of which he complains, but he has not named the Sheriff as a defendant.

For those reasons, the motion of Defendants Fulton County and Fulton County Sheriff's Department will be granted.

### ii.    New York State Defendants

Defendants Air National Guard, Christopher Clifford, "Dan" Kiley, New York State Police, New York State Police Special Operations Response Team ("SORT"), and Richard J. Sloma (the "New York Defendants") also filed a motion to dismiss the Amended Complaint. See dkt. # 79. All of these Defendants except Kiley assert that the claims against them were dismissed by the Court's Order dismissing all claims except Plaintiff's Fourth Amendment destruction of property claim. The State agencies also claim Eleventh Amendment immunity from suit. Defendants admit that Kiley remains as a Defendant in this scenario, but they argue that any claims against him were already resolved in the New York Court of Claims and are barred by the doctrine of collateral estoppel.

Defendants first point out that the only claim that remains in the Amended Complaint after the orders discussed above is Plaintiff's Fourth Amendment destruction-of-property claim. A review of the Amended Complaint, they claim, reveals that none of the New York State Defendants except Kiley are named in that cause of action. They should therefore be dismissed from the case.

The Court has found that Plaintiff's Amended Complaint raises one cognizable claim: a Fourth Amendment claim for unreasonable destruction of property during the execution of a search warrant. The Supreme Court has held that "[t]he general touchstone of reasonableness which governs Fourth Amendment analysis . . . governs the method of execution of the warrant." United States v. Ramirez, 523 U.S. 65, 71

12

(1998) (internal citations omitted).  As such, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search not subject to suppression."  Id.  The Court found that Plaintiff alleged conduct which could lead to liability if Plaintiff can provide evidence that the property destruction occurred and was excessive under the circumstances.

The Amended Complaint attempts to provide a basis for this claim by alleging that:

> 54.    Between the dates of April 30th, and May 2nd, 2013, the Rensselaer County Sheriff's Office, Massachusetts State Police, Pittsfield Police Department, Berkshire County District Attorney's Office, Warren County Sheriff's Office, Fulton County Sheriff's Office, New York State Police, Rensselaer County District Attorney's Office, the Berkshire County Drug Task Force, and Sub-Surface Informational Surveys, Inc. unlawfully searched and seized Stegemann's person, property, vehicles, and residence . . . without a valid warrant.  Over the course of three (3) days, between April 30th, 2013 and May 2nd, 2013, the above-named defendants destroyed Stegemann's residence and property . . . During the course of the unlawful searches and seizures the above-named defendants tore down interior walls and ceilings, ripped apart and scattered personal belongings, seized medical records, personal love letters, religious items, photographs, computers, televisions, chainsaws, generators, motor vehicles, ATVs, weed whackers, snow blowers, financial records, house files, insurance polices, employment information, mail, address books, personal telephone books, and myriad other papers and effects.  The above-named defendants tore apart patio walkways, and rock gardens, bulldozed grape arbors, water fountains, pine trees, rock walls, exterior landscaping, flower gardens; excavated deep holes in the lawns and grounds, removed several dozen tons of pea stone and quartz crystal contained in a serenity garden that was made up of Chinese maple trees, ornamental pine trees, fountains, grape arbors, rose bushes, grape vines; seized over three hundred thousand ($300,000) dollars in United States Currency; seized jewelry, watches, Greylock Federal Credit Union bank accounts; broke portions of motor vehicles, and ATVS, along with myriad other damages.

Amend. Complt. at ¶ 54.

13

The Amended Complaint also alleges that:

56.  The searches, seizures, and destructive actions were committed by the following individuals in the employ of the above-listed agencies acting under the color of state law, between the dates of April 30th, 2013, and May 2nd, 2013 . . . Rensselaer County Sheriff JACK MAHAR, Rensselaer County Undersheriff PAT RUSSO, Rensselaer County Sheriff Investigator STEVE WOHLLEBER, Rensselaer County District Attorney's Investigator ART HYDE, Rensselaer County Sheriff Investigator WILLIAM WEBSTER, Rensselaer County Sheriff Sergeant SHANE HOLCOMB, Rensselaer County Sheriff Deputy J.S. ROBELOTTO, Rensselaer County Sheriff Deputy MARK GERACITANO, Rensselaer County Sheriff Deputy SANDRA BLODGETT, Rensselaer County Sheriff Sergeant JUSTIN WALREAD, Rensselaer County Sheriff Deputy JAMI PANICHI, Warren County Correctional Officer/K9 Officer CHRISTOPHER PERILLI, Warren County Sheriff NATHAN YORK, New York State Police Investigator "DAN" KILEY, FULTON COUNTY SHERIFF and K9 OFFICERS, Berkshire County Sheriff THOMAS BOWLER, Berkshire County Sheriff Sergeant SCOTT COLBERT, Pittsfield Police Chief MICHAEL WYNN, Pittsfield Police Officer TYRONE PRICE, Pittsfield Police Officer JOHN MAZZEO, Pittsfield Police Sergeant GLENN F. DECKER, Pittsfield Police Detective GLEN CIVELLO, the CAPTAIN OF MASSACHUSETTS STATE POLICE TROOP B, Massachusetts State police Lieutenant DAVID BRIAN FOLEY, Massachusetts State Police Sergeant TRAVIS MCCARTHY, Massachusetts State Police Officer WILLIAM SCOTT, Massachusetts State Police Officer DALE GERO, Massachusetts State Police Officer MICHELLE MASON, Massachusetts State Police Officer JOHN STEC, Massachusetts State Police Officer TODD PATTERSON, Massachusetts State Police Officer STEVE JONES, Berkshire County District Attorney DAVID F. CAPLESS, and at the behest of Berkshire County District Attorney DAVID F. CAPLESS, SUB-SURFACE INFORMATIONAL SURVEYS INCORPORATED.

Id. at ¶ 56.  The Amended Complaint further alleges that these defendants "fired a flash-bang grenade" into Plaintiff's bedroom, where he was sleeping at 4:30 a.m. on April 30, 2013.  Id.  Plaintiff fled out the back door of his home and was pursued by Defendant Rensselaer County Sheriff Deputy Mark Geracitano.  Id.  At the same time, SORT members "had seized the property and were maintaining guard along the rock wall bordering the eastern edge of the property[.]"  Id.  They also "gave chase," as did

"Investigators KILEY, WOHLLEBER, HYDE, and MCCARTHY[.]"  Id.  They were

assisted by a New York State Police helicopter.  Id.  Officers placed Plaintiff in a police

vehicle, and the helicopter landed in his front yard.  Id.  Plaintiff alleges that "over the

course of the next three (3) days, and as detailed above, the defendants seized,

searched, and arbitrarily destroyed the residence and property."  Id.  The rest of

Plaintiff's Amended Complaint alleges unlawful monitoring of Plaintiff's phone calls

while held by police, unlawful search techniques which monitored Plaintiff and Plaintiff's

communications by electronic means, and search warrants obtained by improper

means.  See id. at ¶¶ 57-59.

    The Court finds that, with the exception of Defendant Kiley, Plaintiff has not

alleged that any of the New York State Defendants participated in any of the alleged

destructive searching that he claims violated the Fourth Amendment.  In listing the

individuals who allegedly violated his rights in that sort of search, Plaintiff names only

Defendant Kiley.  He does ascribe specific actions to particular New York State

Defendants, but these alleged actions involved guarding certain portions of Plaintiff's

property, giving chase when he attempted to flee, and taking him into custody.  None of

these actions give rise to a claim that these actions engaged in a destructive and

unreasonable search of property, and Plaintiff has failed to state a claim against the

moving Defendants on that basis.  The Court will grant the motion in this respect and

dismiss the claims against Defendants Clifford and Solma on these grounds.   In the

same way, Defendant fails to allege any involvement in destructive searching by the

State agencies,

In addition, Defendants New York State Air National Guard, New York State Police, and SORT argue that the claims against them are barred by the sovereign immunity provided states by the Eleventh Amendment.  "The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."  Kentucky v. Graham, 473 U.S. 159, 169 (1985).  The instant action seeks money damages against a state, and sovereign immunity applies to the State Agency Defendants.  Plaintiff does not deny that sovereign immunity protects these Defendants; he instead "invites" them to waive their immunity in the interest of justice.  Defendants refuse to waive such immunity, and the motion will be granted in this respect.

Finally, Defendants claim that Plaintiff's sole remaining claim against the State Defendants is barred by collateral estoppel.  They argue that Plaintiff filed an identical claim in the New York State Court of Claims in May, 2016.  The Defendant in that case, the State of New York, obtained summary judgment.  Defendants argue that Plaintiff is attempting to relitigate issues that he lost in another forum in this forum, and that he may not do so.  Plaintiff responds that he has appealed the decision in the Court of Claims, and the matter is therefore not final.  Moreover, his claims against the individual officers are not cognizable in the Court of Claims, and therefore collateral estoppel does not apply.

"Federal courts must give State court judgments 'the same preclusive effect as would be given to the judgment under the law of the State in which the judgment was rendered.'" Boomer v. Bruno, 134 F.Supp.2d 262, 267 (N.D.N.Y. 2001) (quoting Johnson v. Watkins, 101 F.3d 792, 794 (2d Cir. 1996)).  Collateral estoppel "precludes

16

a party from relitigating in a subsequent proceeding an issue of law or fact that has already been decided in a prior proceeding." Boguslavsky v. Kaplan, 159 F.3d 715, 719-720 (2d Cir. 1998). Collateral estoppel requires four elements: "(1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits." Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995). In addition to these factors, the "court must satisfy itself that application of the doctrine is fair." Bear, Stearns & Co. v. 1109580 Ont. Inc., 409 F.3d 87, 91 (2d Cir. 2005).

Defendant points to a claim and decision from the New York Court of Claims. See Declaration of Bruce J. Borvin, dkt. # 79-1, exhs. A-B. Plaintiff filed his claim against the State of New York on May 31, 2016. See Exh. A to Borvin Dec. Plaintiff's claim complained about the same series of events that led to the instant action. Id. Plaintiff alleged his rights were violated by aerial surveillance from New York and Massachusetts law enforcement officers. Id. at ¶¶ 5-11. He alleged that an improper search warrant led to a search of his property from April 30 to May 2, 2013. Id. at 12-30. Plaintiff alleged:

> 28. Over the course of three (3) days–April 30th, 2013 through May 2nd, 2013–the police flagrantly exceeded the scope of the warrant, excavating the grounds, and seizing myriad items not particularized in the warrant. The interior of the residence was destroyed. Ceilings and walls were torn down. Speakers were ripped out of walls. Food items, books, and personal papers were torn up and strewn throughout the residence. The doors were battered down. Patio-brick walkways and landings were torn apart. Large rock gardens, park benches, water fountains, grape arbors, shrubs, pine trees, and outdoor lighting, were bulldozed and removed

from the property.  Over twenty (20) ton of decorative pea stone and quartz crystal was excavated and removed from a 75 x 100 foot Serenity Garden.

Id. at ¶ 28.  He claimed this conduct violated the New York Constitution.  Id. at ¶ 29.

Plaintiff alleged that "Respondent State of New York, by its agents, inflicted

Constitutional Torts."  Id. at ¶ 37.  Plaintiff sought more than $3 million in damages.  Id.

at ¶ 42.

The Hon. Judith A. Hard, Judge of the Court of Claims, issued a decision in that

action on January 17, 2017.  See Exh. B to Borvin Dec., dkt. # 79-1.  Judge Hard

granted summary judgment to Defendants on Plaintiff's claims.  In relevant part, Judge

Hard found that:

> there is no evidence in the record to indicate that the officers overstepped the bounds of the warrants, that they engaged in excessive conduct in entering claimant's property, or that their execution of the warrants was accomplished with unnecessary force or severity (see generally Onderdonk v State of New York, 170 Misc. 2d at 162)).  Further, there is no evidence to indicate that the officers "fail[ed] to give due respect to the property and carry out the search warrant in an unprofessional, unreasonable or excessive manner."  (id.).  Accordingly, the Court finds that the cause of action sounding in negligent destruction of property in connection with the execution of the warrants must be dismissed.

Id. at 10-11.  Judge Hard dismissed Plaintiff's entire complaint before the Court of

Claims, in relevant part granting summary judgment on Plaintiff's claims "sounding in . .

. destruction of property" because the Court "found no issues of fact related thereto."

Id.

The Court finds that all four elements for collateral estoppel as raised by these

Defendants have been met on the sole issue remaining in Plaintiff's Complaint.  As to

the first, identity of issue, "the burden of proving identity of issue rests on the proponent

of collateral estoppel[.]"  Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 730 (2d Cir. 2001).  Courts take "a functional approach" to "analyzing collateral estoppel in New York, and it should not be applied rigidly."  Id. at 731.  The question is whether there is "an identity of issue which has necessarily been decided in the prior action and is decisive in the present action[.]"  Schwartz v. Public Adm'r of County of Bronx, 24 N.Y.2d 65, 71 (1969).  A party can satisfy the "identify of issues" requirement by showing that the state court "necessarily decided the very issues that plaintiff is seeking in substance to pursue here under § 1983[,] . .  that his federal claims rest on the same factual grounding as presented to the" state court, and that the prior body's "findings and conclusions . . . are fatally inconsistent with plaintiff's current factual contentions and claims."  Basak v. N.Y. State Department of Health, 9 F.Supp.3d 383, 395 (S.D.N.Y. 2014).

The Plaintiff's complaint before the Court of claims and the decision by the Judge in that Court decided the same issues regarding the reasonableness of the property destruction during the search that form the basis of Plaintiff's claims in this Court.  The Court of Claims found that no evidence supported Plaintiff's claim that officers had negligently destroyed his property during their search.  In New York, an officer "may be held liable for damages negligently caused in the court of executing a valid order of seizure."  Korsinsky v .Rose, 120 A.D.3d 1307, 1309 (2d Dept. 2014).  Proof of negligence requires a showing of "'the existence of a duty on defendant's part to plaintiff, breach of the duty and damages.'"  Id. (quoting Greenberg, Trager & Herbst, LLP v. HSBC Bank USA, 17 NY3d 565, 576 (2011)).  In New York, an officer executing a search warrant has a "duty . . . to execute the warrant without unnecessary force or

severity." <u>Siemiasz v. Landau</u>, 224 A.D. 284, 285 (4th Dept. 1928).   Officers cannot be

held responsible for property destruction in this context unless they go "so far as to

destroy property that was not reasonably necessary to effectuate the search warrant

and potentially violate the Fourth Amendment."  <u>Onderdonk v. State</u>, 170 Misc.2d 155,

162 (Ct. of Claims1996).  Since the issues are coextensive between Plaintiff's state-

court and federal-court claims, the Court must find an identity of issue here.

    As to the other three elements of collateral estoppel, the Court finds those

elements met as well.  First, the parties moved for summary judgment in the Court of

Claims proceeding, and the Judge examined the relevant evidence to determine

whether the destruction of property met the standard.  As such, the issues relevant to

the matter were fully litigated and decided.  Second, the Court of Claims issued a

detailed written decision after the parties collected evidence and briefed the issues

concerning destruction of property; a "full and fair opportunity" to litigate the issue

therefore occurred.  Finally, the Court of Claims opinion summarized above addressed

the nature of the search and the reasonableness of the destruction of the property, and

thus reached all of the issues necessary to support a valid and final decision on the

merits of that search issue.  Collateral estoppel applies in this matter.

    The Court is unpersuaded by Plaintiff's arguments.  Plaintiff first asserts that

collateral estoppel does not apply because he has appealed the Court of Claims

decision and that case therefore lacks finality.  Plaintiff misunderstands the doctrine,

which provides that "pending appeals do not alter the finality or preclusive effect of a

judgment."  <u>Struder v. SEC</u>, 148 Fed. Appx. 58, 59 (2d Cir. 2005) (citing <u>Blinder,</u>

<u>Robinson & Co. v. SEC</u>, 837 F.2d 1099, 1104 n.6 (D.C. Cir. 1989)).  His argument

therefore fails.  Plaintiff next contends that he was not permitted to raise constitutional

claims in the Court of Claims, and that identity therefore does not exist.  The Court has

already rejected that position, as explained above.  Finally, Plaintiff contends that only

the County could be a party to an action in the Court of claims and that collateral

estoppel cannot be applied.  As explained above, that doctrine does not require an

identity of parties, and Plaintiff's position is unavailing.

For the reasons stated above, the Court will grant the State Defendants' motion

to dismiss in full.

### iii.    AT & T Mobility

Defendant AT & T Mobility ("AT & T") also filed a motion to dismiss the Amended

Complaint.  See dkt. # 91.  Defendant raises two grounds.  First, Defendant notes that

all claims brought against AT & T mobility were dismissed by the court's June 16, 2017

Order.  Second, AT & T argues that it is entitled to civil immunity because the company

acted in response to warrants issued by a government entity.

With reference to Defendant AT & T, Plaintiff alleges that, AT & T, along with

other municipal, State, and corporate defendants:

> 58. . . . unlawfully monitored and recorded nine (9) cellular phones that
> belonged to Stegemann, and seized conversations, text messages, cell
> tower information, GPS data, and toll call records in violation of 18 U.S.C.
> §§ 2510-2522; 18 U.S.C. § 2712 . . . The above named defendants
> violated and deprived Stegemann of the rights guaranteed him under the
> 4th, 5th, and 14th Amendments to the United States Constitution; Article 14
> of the Massachusetts Declaration of Rights; NYCPL §§ 690.05, 690.25,
> 690.35, 690.45; 18 U.S.C. §§ 2510-2522; 18 U.S.C. §§ 2701 et seq.;
> Massachusetts General Laws Chapter 272; § 99; and NYCPL §§ 700.05-
> 700.70; the above named defendants further failed to seal the unlawfully
> intercepted communications in violation of 18 U.S.C. § 2518(8)(a).  The
> wiretaps are violations of Title III, 18 U.S.C. §§ 2510-2522; the Electronic
> Communications Privacy Act, 18 U.S.C. §§ 2701 et seq.; §§ 3121-3127.

> The wiretaps are violative of Equal Protection Clause of the 14th Amendment to the United States Constitution[.]

Amended Complt. at ¶ 58.  Plaintiff also alleges numerous acts by the Defendants to intercept text messages, disclose call records, track phone calls and disclose them, intercept oral communications, and install devices on phones to intercept calls.  Id. at ¶¶ 58(a)-(e).

Defendant AT & T argues that Plaintiff's claims against the company in the Amended Complaint should be dismissed because Plaintiff raises claims dismissed earlier by the Court and none of the allegations in the Amended Complaint raise claims for destruction of property under the Fourth and Fifth Amendments.  Plaintiff responds that the Court dismissed the claims he now raises without prejudice.  The Court did dismiss those claims without prejudice pursuant to Heck, but Plaintiff's Amended pleading does not allege facts demonstrating that the Heck bar no longer applies.  Heck holds that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make that determination, or called into question by a federal court's issue of a writ of habeas corpus."  Heck, 512 U.S. at 876-877.  In other words, to bring claims that "would necessarily imply the invalidity" of a prisoner's "conviction or sentence," a plaintiff must "demonstrate that the conviction or sentence has already been invalidated."  Id.  Plaintiff's Amended Complaint does not meet this standard, and must be dismissed without prejudice to a time when Plaintiff can credibly allege that he

has met that standard.  The Court will grant AT & T's motion on this basis and will not address its alternate claim.

### iv.    Glenn Civello, Glenn F. Decker, John Mazzeo, Pittsfield Police Department, Tyrone Price, Michael Wynn

Defendants Glenn Civello, Glenn F. Decker, John Mazzeo, Pittsfield Police Department, Tyrone Price, and Michael Wynn (the "Pittsfield Defendants") also move to dismiss Plaintiff's Amended Complaint.  See dkt. # 94.  They argue that Plaintiff has failed to allege official policies and/or customs which could make the municipal defendants liable.  While the City of Pittsfield is not named as a defendant, claims against individuals in their official capacities create claims against the City, Defendants contend.  Moreover, the Pittsfield Police Department lacks any independent legal standing and cannot be subject to suit.  Any claims against the individual defendants, they argue, should be dismissed based on collateral estoppel.   Plaintiff responds that Defendant Michael Wynn, as Police Chief, is a policy maker and liable for the policies that he claims violated his rights.  Likewise, Tyrone Price, as a Police Investigator, "spearheaded the extra-jurisdictional investigation of Stegemann in New York State" and applied for the search warrant that led to the search in this case.  He also contends that the violation of his rights is part of a practice of such violations by Defendants. Plaintiff further contends that the doctrine of collateral estoppel does not apply in this case, for the same reasons stated previously.

The Court agrees with the Defendants that the Pittsfield Police Department is likely not a proper Defendant.  As in New York, a suit against a Police Department in Massachusetts is "the same as suing the city[.]"  Henschel v. Worcester Police Dep't,

445 F.2d 624, at 624 (1st Cir. 1971).  Even assuming that Plaintiff could name the Police Department instead of the City, the Court would grant the motion.  As explained above, Plaintiff has failed to identify any municipal policy or custom that led to a violation of his constitutional rights.  Nor has he identified any failures in training that led to such a violation.  These failings also apply to any claims against the policy makers. Moreover, many of Plaintiff's arguments are also aimed at an improperly obtained search warrant–a subject that has already been dismissed from this case.  The Court will therefore grant the motion with respect to any claims against the Police Department or any individual Pittsfield Defendants sued in their official capacities.

As to the individual Defendants sued in their individual capacities, the Court will grant the motion on the basis that collateral estoppel bars those claims.  For the reasons explained above, the Court agrees that the decision of the Court of claims represented a full and fair opportunity to litigate the claims of unreasonable destruction of property during the search, and that collateral estoppel therefore bars any such claims.  The fact that moving Defendants were not parties to the suit in the Court of Claims does not prevent the Court from applying collateral estoppel.  Courts are clear that "[a] requirement of complete identity of parties serves no purpose" in the collateral estoppel context "as long as the person against whom the findings are asserted or his privity has had a full and fair opportunity to litigate the identical issue in the prior action." Carino v. Deerfield, 750 F.Supp. 1156, 1170 (N.D.N.Y. 1990) (citing Blonder-Tonque Lab. Inc. v. Univeristy of Illinois Found., 402 U.S. 313, 329 (1971)).  Since Plaintiff had a full and fair opportunity to litigate his claims, collateral estoppel applies to the search claims here.

24

For those reasons, the Court will grant the Pittsfield Defendants' motion to dismiss.

> **v.    Christopher Perilli, Nathan York Warren County, Warren County Sheriff's Office**

Defendants Christopher Perilli, Nathan York, Warren County, and the Warren County Sheriff's Office also moved to dismiss the Amended Complaint.  <u>See</u> dkt. # 97. They argued that Plaintiff did not plausibly allege a municipal policy or custom implicating the County or the Sheriff's office but instead sought to assign vicarious liability to the County from Defendant Perilli's actions.  Defendants also contended that the Sheriff's Office, as an agency of the municipality, could not be liable for claims that involved the municipality.  As to the individual Defendants, Perilli and York contended that Plaintiff failed to allege any specific conduct on their parts that implicated them in the remaining claim of property destruction.  Plaintiff responds with an affidavit that purports to demonstrate the potential liability of the Perilli due to his actions, and liability for the County as a result of a municipal policy and/or custom and for York as a policymaker and for failure to train and supervise.

Making all reasonable inferences in Plaintiff's favor, the Court must find that the Amended Complaint pleads facts sufficient to make plausible that Perilli is liable for violations of Plaintiff's constitutional rights in the search on Plaintiff's property.  Plaintiff alleges that Perilli was one of those who executed the search.  <u>See</u> Amend. Complt. at ¶ 56.  This search allegedly violated Plaintiff's constitutional rights through its unreasonably destructive nature.  <u>Id.</u> at ¶ 54.  Plaintiff alleges the allegedly

unreasonable destruction from that search in detail, and names Defendant Perilli as one who participated in the search. Given Plaintiff's pro se status and the early stage of this litgation, the Court finds the pleading sufficient to state a claim against Perilli. At the same time, the basis for that claim is the same basis upon which the other claims for destruction of property are raised. Perilli was one of the officers allegedly involved in the destructive search. The Court has decided that the doctrine of collateral estoppel bars such claims, and Plaintiff has therefore failed to state a claim upon which relief can be granted against Perilli in this respect.

Plaintiff's pleading does not state a claim against Defendant York, however. Plaintiff's briefing argues that York could be liable as a supervisor who created policies which violated Plaintiff's rights. "[L]iability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant." Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014). A plaintiff must introduce "[e]vidence of a supervisory official's 'personal involvement' in the challenged conduct." Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001)). Personal involvement can include "direct participation by the supervisor in the challenged conduct." Id. Personal involvement by a supervisor can "also be established by evidence of an official's (1) failure to take correct action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates."

26

Id.  Plaintiff's Amended Complaint contains no such allegations, but instead simply describes events which he claims violated his constitutional rights and assigns responsibility to those, like Defendant York, who supervised the officers involved in the incident.  In other words, Plaintiff seeks to impose vicarious liability on York.  He cannot do so, and the motion must be granted in that respect.

Plaintiff also seeks to impose municipal liability on Warren County.  As explained above, a Plaintiff seeking to impose liability on a municipality cannot rely on a respondeat superior theory, but must demonstrate that his injuries were the result of a municipal policy or custom, or the result of a failure to train in a way that violated constitutional norms.  While Plaintiff argues in his briefing that training was inadequate, his Amended Complaint contains no allegations concerning the connection between poor training and Plaintiff's constitutional injuries.  As explained above, his claim against the Sheriff's Office is also redundant of his claim against the County, and the Sheriff's Office would be dismissed even if he had stated a claim against the County.  Plaintiff has therefore failed to state a claim for municipal or supervisory liability against the County, the Sheriff's Office, or Defendant York.  The motion of the Warren County Defendants will be granted as well.

### vi.    Commonwealth Defendants

Defendants Scott Colbert, Thomas Bowler, Berkshire County Sheriff's Office, Berkshire County District Attorney's Office, David Capeless, Richard Locke, Berkshire County, Massachusetts State Police, Rick Smith in his official capacity, and David Brian Foley ("The Commonwealth Defendants") also moved to dismiss the Amended

Complaint.  See dkt. # 114.  They argue that some of these Defendants were already dismissed from the Court's June 16, 2017 order, that some Defendants enjoy sovereign immunity, that some are entitled to qualified immunity, that Plaintiff failed to state a claim against any remaining Defendants, and that collateral estoppel bars Plaintiff's claims anyway.  Plaintiff responds simply by claiming that his filing of a Second Amended Complaint "vitiates" the Defendants' response to his first Amended Complaint.

As explained above, Plaintiff's Second Amended Complaint does not automatically render Defendants' motion moot.  Plaintiff therefore has failed to respond to the motion in question.  The Court will nonetheless consider the Defendants' arguments to determine whether the motion should be granted.

First, as explained above, the only claims that remain in the Amended Complaint are those related to destruction of property under the Fourth and Fifth Amendment.  As such, to the extent that Plaintiff pleads other claims, the motion is granted with respect to those claims without prejudice to refiling if the Heck bar should disappear.  The Amended Complaint, read generously, does raise claims against Berkshire County and Massachusetts state police for a destructive search that violated Plaintiff's constitutional rights.  The Complaint against the Defendants in that respect, cannot be dismissed.

Second, as explained above, the State of Massachusetts enjoys sovereign immunity on the claims remaining in the Complaint, and the motion of the Massachusetts State Police is granted in that respect.[1]  As to the remaining municipal

_____

[1]The Commonwealth Defendants are incorrect, however, to argue that the Berkshire County District Attorney's Office enjoys state sovereign immunity.  A county is

28

defendants–Berkshire County, the Berkshire County Sheriff's Office, Berkshire County District Attorney's Office, the Court finds that–as explained above–Plaintiff has not alleged that his constitutional rights were violated as a result of a municipal policy and/or custom.  As the rules of Monel liability apply to these Defendants, the Court will grant the motion to dismiss in this respect as well.  Plaintiff's Amended Complaint will be dismissed as against all of the moving governmental agencies.

Defendants also argue that qualified immunity protects the remaining individual Defendants from suit in this matter.  The Defendants argue that nothing in the Complaint alleges that these individual defendants knowingly violated Plaintiff's rights, and that qualified immunity therefore applies.  "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir. 2003) (quoting McCardle v. Haddad, 131 F.3d 43, 50 (2d Cir. 1997)).  Qualified immunity also applies when "'it was 'objectively reasonable' for [the officer] to believe that [his or her] actions were lawful at the time of the challenged act.'"  Betts v.

---

not a state and does not enjoy the same immunity as a state.  Monel liability applies in that respect.  The claims as to the destructive conduct of the search, however, do not implicate the District Attorney's Office, however, and dismissal of all claims except those regarding the destructive search means that the District Attorney's Office's motion has been granted.  Defendants claim that Rick Smith, former State Police Captain, is named in his official capacity.  To the extent that the Amended Complaint seeks to sue him in his official capacity, such claims are dismissed.  Courts are clear that "[t]o the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."  Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993).

Shearman, 751 F.3d 78, 83 (2d Cir. 2014) (quoting Jenkins v. City of New York, 478

F.3d 76, 87 (2d Cir. 2007)).  A motion to dismiss a complaint on qualified immunity

grounds "will generally face a difficult road," since courts must "'accept[ ] as true the

material facts alleged in the complaint and draw [ ] all reasonable inferences in

plaintiffs' favor.'"  Garcia v. Doe, 779 F.3d 84, 97 (2d Cir. 2014) (quoting Johnson v.

Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001)).  Still, "qualified

immunity *can* be established by the facts alleged in complaint."  Id.  A motion to dismiss

on qualified immunity should be granted when the facts alleged do not "plausibly

describe a situation in which reasonable officers would have clearly understood that

their actions . . . would violate clearly established law."  Id.

Plaintiff has here alleged that the individual Commonwealth Defendants

participated in a search of his house that unreasonably and unnecessarily destroyed

the property being search.  Such allegations plausibly describe a situation where

reasonable officers would have clearly understood that their actions violated"

constitutional strictures against unreasonable conduct in a search that led to the

destruction of property, even if a warrant had issued.  The motion will therefore be

denied in this respect.

Next, the Commonwealth Defendants contend that the individual

Defendants–Colbert, Bowler, Capeless, and Foley–should be dismissed because

Plaintiff has failed to state a claim that they violated his Fourth and Fifth Amendment

rights in conducting the search.  Defendants contend that no allegations in the

Amendment Complaint plausibly claim that they acted in ways that were unreasonable

and/or malicious, but instead simply claim that they engaged in destructive actions.

Without this allegation of intent, the Defendants claim, Plaintiff has not plausibly alleged a constitutional violation. Making all reasonable inferences in the Plaintiff's flavor, the Court will deny the motion in this respect. Defendants complain that Plaintiff has not properly pled a state of mind, but the Court can infer from the stated allegations–that the Defendants' search of the property was far more extensive and destructive than necessary to find the items sought in the warrant–that the search was motivated by factors beyond the simple execution of a warrant. If Plaintiff could prove such facts, he could prevail against the Defendants on his remaining constitutional claims.

The Defendants also argue that Plaintiff's Fourth and Fifth Amendment claims are barred by the doctrine of collateral estoppel. They adopt the arguments related above. For the reasons stated above, the Court agrees that the decision of the Court of claims represented a full and fair opportunity to litigate the claims of unreasonable destruction of property during the search, and that collateral estoppel therefore bars any such claims. As explained above, this situation applies whether Defendants could have been named in that underlying suit or not. Since Plaintiff had a full and fair opportunity to litigate his claims, collateral estoppel applies to the search claims here.

The Court will also consider the Second Amended Complaint, as filed by Plaintiff, determining whether any amendments to the Complaint overcome the fatal flaws of the First Amended Complaint. Plaintiff titles one section of the Second Amended Complaint, "Causes of Action." See dkt. # 134, ¶¶ 5-41. In those paragraphs, Plaintiff attempts to cure some of the deficiencies in his Amended Complaint, and he raises several causes of action against the Commonwealth Defendants. Plaintiff alleges, for instance, that Defendant Berkshire County District

31

Attorney David F. Capeless, for instance, worked with "his First Assistant District Attorney, Richard Locke, Massachusetts State Police Officer William Scott, and Pittsfield, Massachusetts Police Officer Tyrone Price" to get wiretap warrants and intercept his cellular telephone conversations.  Id. at ¶ 5.  Plaintiff complains that these wiretaps violated federal law.  Id.  The Berkshire County Drug Task Force, Plaintiff avers, then made use of these warrants, and the assistance of AT& T and Verizon, illegally to intercept wireless communications on various telephones Plaintiff owned.  Id. at ¶ 6.  Plaintiff claims that this illegal wiretapping led the Drug Task Force to initiate a joint investigation with the Rennselaer County Drug Task force, which was followed by warrantless video surveillance that violated his Fourth Amendment rights.  Id. at ¶ 9. The remainder of the Second Amended Complaint largely repeats the allegations of a search that violated Plaintiff's rights by its unreasonably destructive nature, and accuses that Commonwealth Defendants of participating in that search.  Id. at ¶¶ 11-41.  Plaintiff does attempt to state that his injuries from this search were caused by some sort of official policy and/or custom initiated by the Commonwealth Defendants or policy makers among the Commonwealth Defendants.  Id. at ¶¶ 28-29.

The Court concludes that the Plaintiff's proposed amendments would be futile. First, as the Court has explained, the Plaintiff's claims which could undermine the legality of the search warrants in this case are subject to the Heck bar, and restating them in a Second Amended Complaint without an allegation that the Heck bar has been eliminated will not revive them.  Second, Plaintiff's claims regarding the allegedly unreasonably destructive search are barred by the doctrine of collateral estoppel.  The Court must therefore find that Plaintiff has not stated a claim upon which relief could be

granted against the Commonwealth in his Second Amendment Complaint.  The Court

will therefore find that claim too must be dismissed as against those Defendants.

In the end, then, the Court will grant the Commonwealth Defendants' motion, dkt.

# 114, and dismiss the case against all of those Defendants with leave to renew should

Plaintiff be able to overcome the Heck bar.

**B.    Second Amended Complaint**

Several Defendants filed motions to dismiss the Second Amended Complaint.

As explained above, the Court will address those motions separately.  In addressing

this Second Amended Complaint, the Court will address whether any of the claims in

the Second Amended Complaint could survive a motion to dismiss and are thus not

futile.  At the outset, the Court notes that no claims except those which address the

unreasonable destruction of property can survive the Heck bar.

**i.    Glenn Civello, Glenn F. Decker, John Mazzeo, Pittsfield Police Department, Tyrone Price, and Michael Winn**

Defendants Glenn Civello, Glenn F. Decker, John Mazzeo, Pittsfield Police

Department, Tyrone Price, and Michael Winn (the "Pittsfield Defendants") filed a motion

to dismiss the Second Amended Complaint.  See dkt. # 145.  Defendants identify only

two changes between the First and Second Amended Complaints: the Plaintiff

substitutes the City of Pittsfield, Massachusetts for the Pittsfield Police Department and

the Seconded Amended Complaint attempts to raise a claim of supervisory liability

against the Pittsfield Police Chief, Defendant Michael Wynn.  Defendants argue that

Plaintiff has failed to state a Monel claim against the City because the Second

Amended Complaint contains no plausible allegations that Plaintiff's alleged Fourth and

33

Fifth Amendment injuries were caused by the City's policies and/or customs.  Plaintiff relies on a single incident, and offers no more than a conclusory description of policy. As to Defendant Wynn, the Plaintiff offers only a conclusory allegation of supervisory liability.  In any case, they contend, collateral estoppel bars any claims against them.

The claims in Plaintiff's Second Amended Complaint which address these Defendants and which do not seek to undermine the validity of the search warrants in this matter concern how the Defendants undertook the search in question.  See Second Amended Complt., ¶¶ 10-41.  These allegations largely restate those made in the Amended Complaint.  For the reasons explained with respect to the claims against the individual defendants discussed above, those claims plausibly state a claim for unreasonable destruction of property and will not be dismissed on that basis.

Plaintiff attempts, in addition, to raise a claim based on Monel and supervisory liability against the agencies and law enforcement officials involved in the case.  He alleges that:

> 35.   Chief Wynn is a policy maker for the City of Pittsfield.  He made a policy choice on behalf of the City to participate in the B[erkshire] C[ounty] D[rug] T[ask] F[orce].  BCDTF has a policy and custom of 'frequently' operating beyond its lawful jurisdiction in Rensselaer County.  As a result of this frequently employed custom, policy and usage, I have been deprived of my Fourth Amendment Rights, and injured thereby.
>
> 36.   Michael Wynn, Richard C. Giardino Nathan York, Jack Mahar, Thomas Bowler, and Derek Pyle all failed to adequately train and supervise the officers that belong to their respective agencies.  Rick Smith, David Brian Foley, Travas McCarthy, Senior Investigator Kiley, Senior Investigator Hyde, Richard McNally, Patrick Russo, David F. Capeless, and Richard Locke all failed to supervise and intervene in the actions of the officers and agents of their respective agencies.
>
> . . .

> 39.    The Counties of Berkshire, Rensselaer, Warren, and Fulton, and the City of Pittsfield are all municipally liable consequent [to] the customs, policies, and usages outlined above.

Second Amended Complt., ¶¶ 35-36. 39.   The Court finds these claims merely conclusory and insufficient to state a claim for municipal or supervisory liability.  Plaintiff merely states that Defendants had policies and practices that led to his injuries, but offers no details on the contents of those inadequate polices and/or training.  With respect to the Pittsfield Defendants, Plaintiff largely argues that they violated Plaintiff's rights by following the BCDTF's policies and customs, not by designing or implementing their own policies.  As such, Plaintiff has failed to state a claim for municipal liability against the Pittsfield Defendants and the motion will be granted in this respect.

Plaintiff's case against the Pittsfield Defendants fails another fundamental reason as well.  The Court agrees with the Defendants that collateral estoppel bars any of the remaining claims against the Pittsfield Defendants.  As explained above, the Court of Claims ruled conclusively that Plaintiff lacked any evidence that the destruction of his property during the warrant search represented even negligent conduct, much less the sort of excessive and unnecessary destruction that could lead to a constitutional claim.  Plaintiff asserts that he lacked a full and fair opportunity to litigate the claim in the Court of Claims.  He contends that the State did not respond to discovery requests, and he could not obtain discovery from any other party.  Plaintiff proceeded *pro se*.  Combined with his limited access to discovery, he claims, he was not permitted a full and fair opportunity to address the issues in his claim.  Moreover,

Plaintiff contends that he lacked a full and fair opportunity to litigate the claim because he could not obtain punitive damages from the Court of Claims.[2]

The question raised by Plaintiff's argument is whether he had a full and fair opportunity to pursue his claim. The Second Circuit Court of Appeals had concluded that:

> In determining whether a party had a full and fair opportunity to litigate the issue, the New York Court of Appeals has instructed that "the various elements which make up the realities of litigation," should be explored, including "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and expertise of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation."

Curry v. City of Syracuse, 316 F.3d 324, 332 (2d Cir. 2003) (quoting Kosakow v. New Rochelle Radiology Assocs., P.C., 275 F.3d 706, 734 (2d Cir. 2001)). Because he opposes the application of collateral estoppel, Plaintiff has "the burden of proving" he was "denied this full and fair opportunity." Hickerson v. City of New York, 146 F.3d 99, 109 (2d Cir. 1998).

In support of his contention that he did not have a full and fair opportunity to litigate his claims, Plaintiff provides what he claims is new evidence that he had been unable to present in the relevant Court. In particular, he cites an affidavit from his girlfriend–Jami Caesar–which contradicts a statement police investigators attributed to her. See dkt. # 156-1 , exh. 4. Caesar claims that she never told police that

---

[2]Plaintiff cites to Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir. 1985) for the principle that collateral estoppel does not apply in this case because he could not obtain all the relief he here seeks form the Court of Claims. Davidson addresses *res judicata*, a related, but different, doctrine that does not apply when "the initial forum did not have the power to award the full measure of relief sought in the later litigation." Davidson, 1986 U.S. App. LEXIS 37439 at *7.

contraband had been hidden in the walls of Plaintiff's home.  Id..  Plaintiff contends that

Caesar was incarcerated when he briefed the motion and unable to procure the

affidavit.  In addition, he contends, he made a reciprocal demand for discovery from the

defendants in the Court of Claims dispute and received no response.  See dkt. # 156-1,

exh. 3.  The Court is unpersuaded that these documents provide a basis for finding that

Plaintiff lacked an opportunity to fully and fairly litigate his claim in the Court of Claims.

First, Plaintiff appears to be seeking procedural remedies available to him in that Court.

If Plaintiff had issues with the responses to the discovery requests Plaintiff made in the

Court of Claims, he could have pursued such remedies there.  Plaintiff claims to have

appealed his decisions in state court, and he cannot simultaneously use this Court for

that purpose.  Finally, the Court notes that Plaintiff filed a motion for summary judgment

in the Court of Claims.  The Court must assume that Plaintiff felt all evidence necessary

to prove his claims of negligent administration of the search warrant had been

produced, and that he had an opportunity adequately to litigate that claim.  This Court is

not an appropriate venue to seek reconsideration of the Court of Claims decision.  To

allow Plaintiff to relitigate the issue of the reasonableness of the search's execution in

this Court would be to ignore the purpose of collateral estoppel.

The Court will therefore grant the Defendants' motion.  The Plaintiff's claims

against the Pittsfield Defendants will be dismissed.  Plaintiff may of course raise any

claims currently barred by Heck should future events lift that bar.

### ii.    AT & T Mobility

Defendant AT & T also moved to dismiss the Second Amended Complaint.  See

dkt. # 148.  AT & T notes that the claims against the company are virtually identical to

those made in the Amended Complaint, and offers the same arguments for dismissal as for the First Amended Complaint. AT & T also argues that the company enjoys immunity under the Federal Wiretap Act.

The Court agrees that Plaintiff has alleged only that AT & T violated his rights in connection to the warrants, and thus has not alleged any conduct related to the allegedly unconstitutional execution of the search warrants in this matter. As such, Plaintiff has not stated a claim upon which relief can be granted against Defendant AT&T and the motion will be granted.

### ii.    Jack Mahar

Defendant Jack Mahar also moved to dismiss the Second Amended Complaint. See dkt. # 150. Mahar, who Plaintiff alleges is a supervisor or commander in the RCDTF, contends that nothing in the Second Amended Complaint alleges that he had personal involvement in the search about which Plaintiff's remaining claims complain. Mahar also contends that collateral estoppel precludes Plaintiff from bringing claims against him regarding the search in this forum. Plaintiff responds that he was not served a copy of the Motion to Dismiss and had to rely on the Court's electronic filing system to obtain a copy. Moreover, he contends, Maher did not respond to his interrogatories, and that his argument to dismiss relies on the Pittsfield Defendant's collateral estoppel argument, rather than his own. Finally, Plaintiff contends that he has named Mahar as a "policy maker," and therefore has stated a claim of personal involvement.

The Court will grant Mahar's motion. First, as explained above, Plaintiff has not alleged any actual policy or custom that violated his constitutional rights. He therefore

38

cannot allege that Mahar created a policy or custom that did so, even if Mahar set policies for the RCDTF. Plaintiff's allegations are simply conclusory. Moreover, as explained above, collateral estoppel bars Plaintiff's claims regarding the execution of the search.

Plaintiff's arguments are unavailing. The Court has explained why his allegations are insufficient. As to the other arguments Plaintiff offers, the Court is unpersuaded. Plaintiff points to no prejudice from service of the motion, and was plainly able to file a brief opposing the motion, which the Court has considered. Plaintiff has faced no prejudice from how Defendant served the Complaint.[3] Whether Mahar has responded to interrogatories is immaterial to the instant motion, which is decided on the pleadings. Similarly, whether Mahar joins in other defendants' collateral estoppel arguments or repeats them himself, the arguments are compelling and the Court accepts them.

For those reasons, the Court will grant Mahar's motion and dismiss the case against him.

### iii.    Cellco Partnership

Defendant Cellco Partnership, d/b/a Verizon ("Verizon") also moved to dismiss the Second Amended Complaint. See dkt. # 158. Verizon argues that all of Plaintiff's claims against Verizon were previously dismissed by this Court, that service was not properly perfected against Verizon and the Court lacks personal jurisdiction, and that

---

[3]In any case, Defendant Mahar filed proof of service, demonstrating that Defendant mailed the motion and brief in support to Plaintiff's listed mailing address. See dkt. # 151. The Court is uncertain as to how an incarcerated person has access to electronic filing.

Plaintiff's claims against Verizon are barred by collateral estoppel.  A Judge in the Supreme Court of Rennselaer County dismissed a case Plaintiff brought in that Court premised on the same claims.  Plaintiff responds by arguing that Verizon violated his rights under federal law by complying with wiretap warrants.  He also contends that the wiretap claims are not subject to the Heck bar, as they would not effect his underlying conviction.  Plaintiff further states that he properly served the Complaint.  In the alternative, Plaintiff asks for an extension of time to do so properly.  He also argues that he lacked a full and fair opportunity to litigate his claim in state court, as the matter was dismissed for improper service and not on the merits.

The Court will grant Verizon's motion.  First, as explained above with reference to AT&T, the Court has already dismissed the wiretap-related claims that are the only claims Plaintiff raises against Verizon in the Second Amended Complaint.  Second, the Court finds that collateral estoppel applies to those wiretap claims and bars relitigation in this forum.  The Rennselaer County Supreme Court found that:

> Counsel for Verizon states that the Federal Wiretap Act, as well as the New York and Massachusetts wiretap statues (NY CPL 700.35(5); Massachusetts Law Part IV Cpt. 72, § 99) provide that a good faith reliance on a court order or warrant is a "complete defense" to an action brought under the respective statutes.  Counsel argues that the Orders issued by Jstice Agostini provide Verizon with a complete defense in this action.  This Court agrees.  It is apparent that the aforementioned laws are designed to insulate providers from civil actions arising out of their cooperation with law enforcement officers in carrying out the provisions of an eavesdropping warrant.  *See* Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 700.35 at 365.  In this case, the Massachusetts Court orders provided by Verizon indicate that it is entitled to this protection.

See Exh. to Verizon's Brief, dkt. # 158-13, at 7.  The New York Appellate Division, Third Department, upheld this decision.   See exh. A to Verizon's Reply Brief, dkt. # 179-1.

Plaintiff argued his case and the Supreme Court found that he could not prevail under any of the wiretap statutes he raised. The decision survived appeal. Plaintiff had a chance to litigate the matter, and he cannot reopen the issue in this forum. The Court will therefore grant the motion to dismiss. As Plaintiff admits that those wiretap claims would not necessarily overturn his conviction if he prevailed, the Court will not dismiss with an opportunity to replead.[4]

### D.   Plaintiff's Motions

Plaintiff has filed a number of motions. Plaintiff seeks entry of default and default judgment against various Defendants. See dkt. # 152-153.

The first of those motions seeks default judgment against Defendants William Scott, John Stec, James Deas, Steve Jones, Michelle Mason, Travas McCarthy, Robert Patterson, Dale Gero, Berkshire County Drug Task Force, Cellco Partnership, d/b/a Verizon Wireless, and Subsurface Informational Surveys, Inc. See dkt. # 152. Of those Defendants, as explained above, Verizon filed a motion to dismiss. Summons for Scott, Stec, Jones, Mason, McCarthy, Patterson, BCDTF, and Gero were returned unexecuted. See dkt. #s 108-111. No proof of service or attempt at service has been filed for Deas, named only in the Second Amended Complaint, or Subsurface Informational Surveys, Inc. An entry of default—which must precede a motion for default

---

[4]As the Court is capable of dismissing such claims with prejudice, the Court will not address the issue of personal jurisdiction, particularly since Verizon had no problem in responding to the Second Amended Complaint. If the Court found that Plaintiff had not served the Second Amended Compliant properly and dismissed the case on those grounds, the Court would provide Plaintiff with an extension of time to serve that pleading. That would lead to a renewed motion to dismiss, which would be granted on the same basis as the Court grants this motion.

judgment–is unavailable against any of these Defendants.  The motion will therefore be denied.

As to the second motion, Plaintiff seeks default judgment against Defendants Rensselaer County, Rensselaer County Sheriff's Office, Rensselaer County District Attorney's Office, Patrick Russo, Arthur Hyde, Steven Wohlleber, William Webster, Shane Holcomb, Jason Robelotto, Mark Geracitano, Sandra Blodgett, Justin Walread, Jami Panichi, and Derek Pyle.  None of these Defendants has been served with any Complaint in this matter.  See dkt. #s 108-111.  No document proving an attempt at service has been filed for Defendant Geracitano.  Again, the Court cannot enter default, much less default judgment, on a party never served with the action.  The motion will therefore be denied.

Plaintiff also filed motions to compel discovery.  The first, aimed at Defendant Jack Mahar, is moot.  See dkt. # 142.  The Court's decision here dismisses Defendant Mahar from the case.  The Second, aimed at the Pittsfield Defendants, is also moot. See dkt. # 169.  Those Defendants have likewise been dismissed from the Complaint. The Court will therefore deny the motion as moot.  A third, dkt. # 196, seeks discovery from Defendants Warren County, Nathan York, Christopher Perilli, Fulton County, Richard Giardino, and Unknown Members of the Fulton County Sheriff's Office Canine Team.  That motion is likewise denied as moot.[5]

### E.    Status of the Complaint

---

[5]The Court notes that some Defendants to the action have not yet been served. Plaintiff should effect services on these parties immediately or face dismissal in favor of those parties.

The Court's decision here dismisses the case against all of the Defendants who have been served with this matter. Plaintiff's claims which implicate the legality of the search of his property–rather than the implementation of that search–have been dismissed pursuant to the rule in Heck v. Humphrey. Plaintiff may re-plead those claims if subsequent events lift the bar established by that decision. Only in that sense are the claims dismissed without prejudice. Plaintiff may not re-file those claims until the bar is removed. The Court has also previously dismissed claims based on alleged violations of certain state and federal statutes.

The only claims that remained to be considered were claims concerning the way the search was carried out. Plaintiff's allegations were sufficient to make it plausible that various Defendants had engaged in an unreasonable search that wantonly destroyed his property. After Defendants' motions, however, the Court has concluded that collateral estoppel bars such claims. Better pleading would not cure that issue, and the Court will grant the motions with prejudice with respect to the claims against the individual defendants for the way they conducted their search.

The Court has also concluded that Plaintiff has failed to state a claim for Monell liability against the various municipal entities and supervisory liability against various officials sued in this case. Normally, the Court would permit repleading of such claims. Plaintiff may have been able to supplement his allegations to include facts making it plausible that his injuries were the result of an official policy and/or custom. The Court will not provide that opportunity in this case, however. First, Plaintiff would be offering a Third Amended Complaint. He has already been provided several opportunities to state a claim for municipal and supervisory liability, and has not done so. Opportunities

to amend to better frame a claim cannot be endless. Second, and more important, attempting to re-plead such claims would be pointless. To prove claims against the municipalities in the present posture of the case would require that Plaintiff plead that his right to a reasonable search had been violated pursuant to an official policy or custom. As the Court has explained, however, collateral estoppel bars such claims. Plaintiff had a full and fair opportunity to litigate such claims in state court. Allowing repleading would therefore be pointless.

The Court will therefore grant the Defendants' motions with prejudice with respect to all claims except those the Court has previously determined are subject to the <u>Heck</u> bar. Plaintiff may only re-plead those claims when he can demonstrate the lifting of the <u>Heck</u> bar.

## III.    CONCLUSION

For the reasons stated above, Defendants' motions to dismiss, dkt. #s 57, 79, 91, 94, 97, 114, 145, 148, 150, and 158, are hereby GRANTED. Plaintiff's claims against these Defendants are dismissed with prejudice except for those claims which are subject to the bar in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). As explained in the Court's previous decisions, Plaintiff's claims which are subject to that <u>Heck</u> bar may be re-plead, BUT ONLY AT SUCH TIME AS PLAINTIFF CAN DEMONSTRATE THAT HE CAN OVERCOME THAT BAR DUE TO A FAVORABLE DETERMINATION FROM SOME OTHER COURT. Any attempt by Plaintiff to file an Amended Complaint containing any of the claims dismissed by this opinion that are not subject to the <u>Heck</u> bar will be summarily dismissed by the Court. Any attempt to file an Amended Complaint containing the claims subject to the <u>Heck</u> bar that does not contain

allegations that the bar has been lifted will be summarily dismissed by the Court.

Plaintiff may be subject to sanction for filing such a frivolous action.  Plaintiff's motions

for entry of default and default judgment, dkt. #s 152-153, are hereby DENIED.

Plaintiff's motions to compel discovery, dkt. #s 169, 196, are hereby DENIED as moot.


**IT IS SO ORDERED.**


Thomas J. McAvoy
Senior, U.S. District Judge


Dated: March 5, 2018