**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSHUA G. STEGEMANN,**
                            **Plaintiff,**

      vs.                                                                     1:15-CV-21

**RENSSELAER COUNTY SHERIFF'S**
**OFFICE, et al.,**

                            **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**


**DECISION & ORDER**

      Before the Court are various motions. Defendant Richard C. Giardino moves to dismiss the Complaint. See dkt. # 228. Defendants Sandra Blodgett, Mark Geracitano, Shane Holcomb, Arthur Hyde, Richard McNally, Jami Panichi, Rensselaer County, Jason Robelloto, William Roy, Patrick Russo, Justin Walread, William Webster, Steve Wohlleber, and Dereck Pyle ("Rensselaer Defendants") move to dismiss the Complaint. See dkt. # 240. Defendants Michelle Mason, William Scott, Dale Gero, John Stec, Robert Patterson, and Steve Jones ("Mass. State Police Defendants"), also move to set aside the Clerk's entry of default. See dkt. # 298. Plaintiff moves for default judgment against those Defendants seeking to set aside the entry of default. See dkt. # 300. Defendant Investigator Corey Film moves to dismiss the Complaint. see dkt. # 304. The parties have briefed the issues and the Court will decide the matter without oral argument.

**I.**      **BACKGROUND**

Plaintiff filed his original Complaint, which he brought pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), on January 8, 2015. See dkt. # 1. Plaintiff alleged violations of his constitutional rights by Defendants, various police agencies and departments, law enforcement officials, and cellular telephone providers in connection with a search of his residence pursuant to a drug trafficking investigation. That investigation eventually led to Plaintiff's conviction and prison sentence. Plaintiff alleged that the search of his property violated his Fourth and Fifth Amendment rights. Id. He also alleged that Defendants' destruction of his property violated his Fourteenth Amendment rights. Plaintiff also filed a motion for leave to proceed *in forma pauperis*. See dkt. # 2.

After a series of decisions and an appeal, the case before this Court eventually dropped any claims that depended on Plaintiff's exoneration on the charges against him, as such claims were barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Instead, the case centered on claims that those who executed the search had done so in an unreasonable manner, destroying Plaintiff's property and violating his Fourth Amendment rights. A number of defendants then filed motions to dismiss the case. In a decision on March 5, 2018, the Court granted these motions, finding that collateral estoppel barred Plaintiff's claims against most of the moving defendants, and that Plaintiff had failed to state claims for municipal or supervisory liability. See dkt. # 201. The Court noted, however, that several of the Defendants named in the operative pleading–Plaintiff's Second Amended Complaint–had not yet been served. See dkt. # 134. Those Defendants have now been served, and they bring the instant motions to dismiss.

The Court assumes familiarity with the factual allegations in the Second Amended Complaint from the Court's previous decision. The Court will relate the facts relevant to the various motions here analyzed at an appropriate point.

## II. LEGAL STANDARD

Numerous Defendants have moved to dismiss the Complaint for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). When, as here, the Plaintiff proceeds *pro se*, the Court "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)). "This is especially true when dealing with pro se complaints alleging civil rights violations." Id.

## III. ANALYSIS

### A. Motion of Richard C. Giardino

Defendant Richard C. Giardino moves to dismiss the claims against him in the Amended Complaint. Giardino was named in Plaintiff's Second Amended Complaint, but

had not yet been served at the time of the Court's decision on the first motions seeking dismissal of that version of the Complaint. Giardino has now been served and seeks dismissal. He argues that he was not Sheriff of Fulton County at the time of the underlying incident. He was first elected to the Office in November 2015 and therefore cannot be liable. Defendant requests that the Court take judicial notice of this fact and dismiss the Second Amended Complaint against him as he cannot be liable. Plaintiff agrees that Giordano cannot be liable and asks that the Court substitute former Sheriff Thomas Lowrey as Defendant. He contends that substituting the name of Lowrey for Giordano as Defendant in his Second Amended Complaint would permit him to state a claim against Lowrey.

The Court interprets Plaintiff's response, dkt. # 245, as a motion for leave to amend his Second Amended Complaint and replace Giordano with Lowrey as Defendant. Giordano, anticipating such a motion, opposes it. The Federal Rules of Civil Procedure provide that "leave to amend the pleadings should be 'freely give[n] . . . when justice so requires.'" AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010)). Generally, courts in this Circuit have permitted "'a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" Id. (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d. Cir. 1993)). Still, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)).

The Second Amended Complaint alleges that:

4

> 31. Richard C. Giardino is a the [sic] Fulton County Sheriff. He is a policy maker for Fulton County. Fulton County frequently farms the training of its canine deputies out to Rensselaer County. Giordino has a policy and custom of farming-out the in-service training of his canine deputies to Rensselaer County.
> . . .
> 33. . . . Giardino . . . failed to train [his] own deputies, and failed to supervise [his] own deputies. The deputies were sure to confront situations wherein protection of the Fourth Amendment Rights of those they came into contact with during their in-service training in Rensselaer County was at its apex. . . . Giardino [was] deliberately indifferent to the rights of such people, including me.
> . . .
> 36. . . . Giardino . . . failed to adequately train and supervise the officers that belong to their respective agencies.

Second Amended Complt., dkt. # 134, at ¶ 31, 33, 36. Plainiff's proposed amendment would replace Giardino with Lowrey.

The Court decided in its previous decision that Plaintiff's claims here fail to state a claim for supervisory liability. Plaintiff had argued that other sheriffs could be liable as supervisors who created policies which violated Plaintiff's rights. "[L]iability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant." Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014). A plaintiff must introduce "[e]vidence of a supervisory official's 'personal involvement' in the challenged conduct." Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001)). Personal involvement can include "direct participation by the supervisor in the challenged conduct." Id. Personal involvement by a supervisor can "also be established by evidence of an official's (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate

5

indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Id.

Plaintiff's remaining claims are that the Defendants violated his rights in the manner in which they conducted the search of his property, which he claims was excessively destructive. Plaintiff's Second Amended Complaint contains no allegations of any specific policy or custom instituted by any sheriff that caused his injuries. Instead, Plaintiff describes events which he claims violated his constitutional rights and assigns responsibility to those who supervised the officers involved in the incident. In other words, Plaintiff seeks to impose vicarious liability on supervisors. He cannot do so.

As such, any amendment to substitute Thomas Lowrey for Giardino would be futile, and the Court will deny that motion to the extent that Plaintiff attempts to raise it.

### B. Motion of Rennselaer Defendants

The Rennselaer Defendants also move to dismiss the Second Amended Complaint against them. They argue that collateral estoppel and the law of the case bar Plaintiff's claims, that Plaintiff fails to allege personal involvement on the Defendants in reference to the alleged property damage, that qualified immunity applies for the individual Defendants, that Plaintiff has not alleged properly any municipal liability, and that the statute of limitations has run for some of the Defendants. These Defendants had not been served with process at the time the Court rendered its earlier decision.

#### i. Collateral Estoppel

As did many of the Defendants who were served with the Complaint, Amended Complaint, and Second Amended Complaint, the Rennselaer Defendants allege that

6

Plaintiff's claims are barred by the doctrine of collateral estoppel. They contend that Plaintiff filed identical claims regarding the search of his property in the New York Court of Claims, where a state judge granted summary judgment to defendants on those claims.

The Court's previous decision on the other defendants' motions to dismiss explained how collateral estoppel applies to this case:

> "Federal courts must give State court judgments 'the same preclusive effect as would be given to the judgment under the law of the State in which the judgment was rendered.'" Boomer v. Bruno, 134 F.Supp.2d 262, 267 (N.D.N.Y. 2001) (quoting Johnson v. Watkins, 101 F.3d 792, 794 (2d Cir. 1996)). Collateral estoppel "precludes a party from relitigating in a subsequent proceeding an issue of law or fact that has already been decided in a prior proceeding." Boguslavsky v. Kaplan, 159 F.3d 715, 719-720 (2d Cir. 1998). Collateral estoppel requires four elements: "(1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits." Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995). In addition to these factors, the "court must satisfy itself that application of the doctrine is fair." Bear, Stearns & Co. v. 1109580 Ont. Inc., 409 F.3d 87, 91 (2d Cir. 2005).
>
> Defendant points to a claim and decision from the New York Court of Claims. See Declaration of Bruce J. Borvin, dkt. # 79-1, exhs. A-B. Plaintiff filed his claim against the State of New York on May 31, 2016. See Exh. A to Borvin Dec. Plaintiff's claim complained about the same series of events that led to the instant action. Id. Plaintiff alleged his rights were violated by aerial surveillance from New York and Massachusetts law enforcement officers. Id. at ¶¶ 5-11. He alleged that an improper search warrant led to a search of his property from April 30 to May 2, 2013. Id. at 12-30. Plaintiff alleged:
>
> 28. Over the course of three (3) days–April 30th, 2013 through May 2nd, 2013–the police flagrantly exceeded the scope of the warrant, excavating the grounds, and seizing myriad items not particularized in the warrant. The interior of the residence was destroyed. Ceilings and walls were torn down. Speakers were ripped out of walls. Food items, books, and personal papers were torn up and strewn throughout the residence. The doors were battered down. Patio-brick walkways and landings were torn apart. Large rock gardens, park benches, water fountains, grape arbors, shrubs, pine trees, and outdoor lighting, were bulldozed and removed from the property. Over twenty (20)

7

ton of decorative pea stone and quartz crystal was excavated and removed
from a 75 x 100 foot Serenity Garden.

Id. at ¶ 28.  He claimed this conduct violated the New York Constitution.  Id. at ¶ 29. Plaintiff alleged that "Respondent State of New York, by its agents, inflicted Constitutional Torts."  Id. at ¶ 37.  Plaintiff sought more than $3 million in damages. Id. at ¶ 42.

The Hon. Judith A. Hard, Judge of the Court of Claims, issued a decision in that action on January 17, 2017.  See Exh. B to Borvin Dec., dkt. # 79-1.  Judge Hard granted summary judgment to Defendants on Plaintiff's claims.  In relevant part, Judge Hard found that:

> there is no evidence in the record to indicate that the officers overstepped the bounds of the warrants, that they engaged in excessive conduct in entering claimant's property, or that their execution of the warrants was accomplished with unnecessary force or severity (see generally Onderdonk v State of New York, 170 Misc. 2d at 162)).  Further, there is no evidence to indicate that the officers "fail[ed] to give due respect to the property and carry out the search warrant in an unprofessional, unreasonable or excessive manner."  (id.).  Accordingly, the Court finds that the cause of action sounding in negligent destruction of property in connection with the execution of the warrants must be dismissed.

Id. at 10-11.  Judge Hard dismissed Plaintiff's entire complaint before the Court of Claims, in relevant part granting summary judgment on Plaintiff's claims "sounding in . . . destruction of property" because the Court "found no issues of fact related thereto."  Id.

The Court finds that all four elements for collateral estoppel as raised by these Defendants have been met on the sole issue remaining in Plaintiff's Complaint.  As to the first, identity of issue, "the burden of proving identity of issue rests on the proponent of collateral estoppel[.]"  Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 730 (2d Cir. 2001).  Courts take "a functional approach" to "analyzing collateral estoppel in New York, and it should not be applied rigidly."  Id. at 731.  The question is whether there is "an identity of issue which has necessarily been decided in the prior action and is decisive in the present action[.]"  Schwartz v. Public Adm'r of County of Bronx, 24 N.Y.2d 65, 71 (1969).  A party can satisfy the "identify of issues" requirement by showing that the state court "necessarily decided the very issues that plaintiff is seeking in substance to pursue here under § 1983[,] . . . that his federal claims rest on the same factual grounding as presented to the" state court, and that the prior body's "findings and conclusions . . . are fatally inconsistent with plaintiff's current factual contentions and claims."  Basak v. N.Y. State Department of Health, 9 F.Supp.3d 383, 395 (S.D.N.Y. 2014).

The Plaintiff's complaint before the Court of claims and the decision by the Judge in that Court decided the same issues regarding the reasonableness of the property destruction during the search that form the basis of Plaintiff's claims in this Court. The Court of Claims found that no evidence supported Plaintiff's claim that officers had negligently destroyed his property during their search. In New York, an officer "may be held liable for damages negligently caused in the court of executing a valid order of seizure." Korsinsky v .Rose, 120 A.D.3d 1307, 1309 (2d Dept. 2014). Proof of negligence requires a showing of "'the existence of a duty on defendant's part to plaintiff, breach of the duty and damages.'" Id. (quoting Greenberg, Trager & Herbst, LLP v. HSBC Bank USA, 17 NY3d 565, 576 (2011)). In New York, an officer executing a search warrant has a "duty . . . to execute the warrant without unnecessary force or severity." Siemiasz v. Landau, 224 A.D. 284, 285 (4th Dept. 1928). Officers cannot be held responsible for property destruction in this context unless they go "so far as to destroy property that was not reasonably necessary to effectuate the search warrant and potentially violate the Fourth Amendment." Onderdonk v. State, 170 Misc.2d 155, 162 (Ct. of Claims 1996). Since the issues are coextensive between Plaintiff's state-court and federal-court claims, the Court must find an identity of issue here.

As to the other three elements of collateral estoppel, the Court finds those elements met as well. First, the parties moved for summary judgment in the Court of Claims proceeding, and the Judge examined the relevant evidence to determine whether the destruction of property met the standard. As such, the issues relevant to the matter were fully litigated and decided. Second, the Court of Claims issued a detailed written decision after the parties collected evidence and briefed the issues concerning destruction of property; a "full and fair opportunity" to litigate the issue therefore occurred. Finally, the Court of Claims opinion summarized above addressed the nature of the search and the reasonableness of the destruction of the property, and thus reached all of the issues necessary to support a valid and final decision on the merits of that search issue. Collateral estoppel applies in this matter.

The Court is unpersuaded by Plaintiff's arguments. Plaintiff first asserts that collateral estoppel does not apply because he has appealed the Court of Claims decision and that case therefore lacks finality. Plaintiff misunderstands the doctrine, which provides that "pending appeals do not alter the finality or preclusive effect of a judgment." Struder v. SEC, 148 Fed. Appx. 58, 59 (2d Cir. 2005) (citing Blinder, Robinson & Co. v. SEC, 837 F.2d 1099, 1104 n.6 (D.C. Cir. 1989)). His argument therefore fails. Plaintiff next contends that he was not permitted to raise constitutional claims in the Court of Claims, and that identity therefore does not exist. The Court has already rejected that position, as explained above. Finally, Plaintiff contends that only the County could be a party to an action in the Court of claims and that collateral estoppel cannot be applied. As explained above, that doctrine does not require an identity of parties, and Plaintiff's position is unavailing.

> For the reasons stated above, the Court will grant the State Defendants' motion to dismiss in full.

See dkt. # 201, at 16-21. The Court further found that these principles applied to individual defendants employed by the City of Pittsfield, Massachusetts, concluding that:

> As to the individual Defendants sued in their individual capacities, the Court will grant the motion on the basis that collateral estoppel bars those claims. For the reasons explained above, the Court agrees that the decision of the Court of claims represented a full and fair opportunity to litigate the claims of unreasonable destruction of property during the search, and that collateral estoppel therefore bars any such claims. The fact that moving Defendants were not parties to the suit in the Court of Claims does not prevent the Court from applying collateral estoppel. Courts are clear that "[a] requirement of complete identity of parties serves no purpose" in the collateral estoppel context "as long as the person against whom the findings are asserted or his privity has had a full and fair opportunity to litigate the identical issue in the prior action." Carino v. Deerfield, 750 F.Supp. 1156, 1170 (N.D.N.Y. 1990) (citing Blonder-Tonque Lab. Inc. v. Univeristy of Illinois Found., 402 U.S. 313, 329 (1971)). Since Plaintiff had a full and fair opportunity to litigate his claims, collateral estoppel applies to the search claims here.

Id. at 24.

As to the Rennselaer Defendants, the Second Amended Complaint alleges that Defendants Wohlleber, Hyde, and Holcomb were involved in the investigation that led to the raid on his home. 2nd Amend. Complt. at ¶ 9. Defendant Holcomb applied for the warrant that led to the search. Id. at ¶ 10. Defendants Hyde, Holcomb, Wohlleber, Roy, Geracitano, and Robelotto took part in the search. Id. Wohlleber allegedly involved himself in aerial surveillance of Planitiff's home. Id. at ¶ 13. Roy and Hyde took part in Plaintiff's arrest. Id. at ¶ 15. Walread guarded Plaintiff in a vehicle while the search occurred. Id. Wohlleber "invited the Massachusetts Officers" to "do whatever they wanted" when they searched Plaintiff's property. Id. at ¶ 17. Plaintiff alleges that "[t]he above defendants destroyed my residence and property and prevented" Plaintiff's uncle from coming onto the property in his behalf. Id. at ¶ 22. The searchers, Plaintiff alleges,

10

destroyed his property in their search.  Id.  No officers intervened to stop them.  Id. at ¶ 23.
Plaintiff also alleges that Defendants Russo, Pyle, McNally and Hyde served as "commanders and supervisors of the Rensselaer County Drug Task Force" and made policy for the County with respect to the task force.  Id. at ¶ 30.  Plaintiff also alleges that Hyde, McNally, and Russo "failed to supervise and intervene in the actions of the officers and agents" who performed the search.  Id. at ¶ 36.  Defendant Webster appears at the end of Plaintiff's Second Amended Complaint.  Id. at ¶ 41.  Plaintiff met Webster, an Investigator, at the Rensselaer County Jail.  Id.  Plaintiff asked Webster why investigators had destroyed his home.  Webster responded that "It wasn't us.  It was the Berkshire guys that ran around and destroyed everything."  Id.

The only viable claims in this case arise out of the execution of the search.  All of the individual Defendants here named who could be culpable in any sense could only be culpable for their role in the execution of the search.[1]  Since the Court has already

---

[1] In any case, though Plaintiff names Defendant Sandra Blodgett in the Second Amendment Complaint's caption, he does not even mention her in the actual pleading. The motion would be granted with respect to Blodgett even if Plaintiff had stated a claim against the other Defendants.  Likewise, Plaintiff's allegations that Defendants Russo, Pyle, McNally and Hyde are liable as supervisors fail to state a claim and would be dismissed in that respect too.  "[L]iability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant."  Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014).  A plaintiff must introduce "[e]vidence of a supervisory official's 'personal involvement' in the challenged conduct."  Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001)).  Personal involvement can include "direct participation by the supervisor in the challenged conduct."  Id.  Personal involvement by a supervisor can "also be established by evidence of an official's (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates."  Id.  Plaintiff's Amended

determined that such claims are barred by the doctrine of collateral estoppel, the motion of the Rensselaer Defendants will be granted in this respect.

### ii. Municipal Liability

Plaintiff also attempts to state claims against Rensselaer County and the Rensselaer County Sheriff's Office. The Rensselaer Defendants argue that those claims must be dismissed as well. Municipal liability is limited under Section 1983 by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). In that case, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006). To prevail, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Commr's v. Brown, 520 U.S. 397, 403 (1997). "A government's official policy may be 'made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 142 (2d Cir. 1999) (quoting Monell, 436 U.S. at 694). Plaintiff must demonstrate that his rights were violated "pursuant to a governmental custom, policy, ordinance, regulation, or decision." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Plaintiff must show "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Id.

---

Complaint contains no such allegations, but instead simply describes events which he claims violated his constitutional rights and assigns responsibility to those, like the Rensselaer supervisory Defendants, who supervised the officers involved in the incident. In other words, Plaintiff seeks to impose vicarious liability on those Defendants. He cannot do so, and the motion must be granted in that respect as well.

12

Plaintiff's Second Amended Complaint contains no allegations that his injuries were the result of a municipal policy and/or custom. The Second Amended Complaint simply contains broad allegations that law enforcement participated in unconstitutional activity against Plaintiff. The Court has previously determined that Plaintiff's allegation of unconstitutional property damage is sufficient to survive an initial screening. Plaintiff's Second Amended Complaint does allege property damage, but does not allege that the property damage came as a result of any municipal policy or custom. The motion will therefore be granted in this respect. Similarly, Plaintiff names as a Defendant the Rensselaer County Sheriff's Office. He likewise offers no allegation that the Defendant Office violated his rights pursuant to a policy or custom, and has not stated a claim. Moreover, "New York law governs the capacity of the police department to sue or be sued" under Section 1983, and "[i]n New York, [police] departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the" county. Loria v. Irondequoit, 775 F.2d 599, 606 (W.D.N.Y. 1990). Any claims against the Rensselaer County Sheriff's Office must be dismissed as well.

Plaintiff also appears to argue that Rensselaer County is liable because of a failure to train. "Municipal liability may . . . be premised on a failure to train employees when inadequate training 'reflects deliberate indifference to . . . constitutional rights.'" Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 440 (2d Cir. 2009) (quoting City of Canton v. Harris, 489 U.S. 378, 392 (1989)). To demonstrate such deliberate indifference, the plaintiff must demonstrate "(1) 'that a policymaker knows to a moral certainty that her employees will confront a given situation'; (2) 'that the situation either presents the

13

employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation'; (3) 'that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights.'" Id. (quoting Walking v. City of New York, 974 F.2d 298, 297-98 (2d Cir. 1992)). "'[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents.'" Id. (quoting Vann v. City of New York, 72 F.3d 1040,1049 (2d Cir. 1995)). The allegations in the Second Amended Complaint contain no such claims, and the Court will grant the motion in this respect as well.

All of Plaintiff's claims against the Rensselaer County Defendants, therefore, must be dismissed. Because Plaintiff's claims are either barred by collateral estoppel or fail to state any claim against the municipality, the Court does not need to address the Defendant's other arguments concerning qualified immunity and the statute of limitations.[2]

---

[2] A three-year statute of limitations governs claims brought pursuant to 42 U.S.C. § 1983 in New York. Jewell v. County of Nassau, 917 F.3d 738, 740 (2d Cir. 1990). Plaintiff is correct that Defendant Pyle was named in the initial Complaint and served with that Complaint. Though the statute of limitations defense does not apply to him, the claims against him are dismissed on the same basis that all other claims against the individual Defendants are dismissed. See dkt. #s 1, ¶ 11; 35 (amending summons to include Pyle). As to Defendants Roy and McNally, both added after the three-year statute of limitations had run, the Court notes that a Plaintiff may sometimes be permitted to add a Defendant to a Section 1983 claim after the statute of limitations has run, particularly when "the newly added defendants were not named named originally because the plaintiff did not know their identities." Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013). If a Complaint names Doe defendants, a Plaintiff under certain circumstances can also name a party to replace a Doe defendant with the correct name. Id. at 518-19. Plaintiff did not name any Doe defendants here. Instead, in responding to Defendants' motion, Plaintiff claims that Roy was an "unknown" defendant at the time he filed his initial Complaint. See Plaintiff's Response, dkt. # 261, at 8. He does not allege the same for McNally, but instead claims that he had notice because of his position as District Attorney of Rensselaer County at the time of the incident in question. As such, if the Court were not dismissing the claim

### C. Motion of Defendant Investigator Corey Film

Defendant Corey Film also seeks dismissal of the case against him, relying on the same basis as the Rensselaer Defendants. With reference to Film, Plaintiff's Second Amended Complaint alleges that Film was one of 50 law enforcement officials who met to plan the raid on his home on April 30, 2013. Second Amend. Complt. at ¶ 10. Investigator Film is not again referenced in the Second Amended Complaint, but when read generously that document could also allege that Film was among the police officers who "tore down interior walls and ceilings, ripped out insulation and left it scattered on the floor, tore off wainscoating, tore down shelfs [sic], ripped speakers out of the walls, scattered books, mediacl [sic] records, personal love letters, religious items, photographs, computers, televisions" and tore about landscaping, trees, ponds, and destroyed a "Chinese Maple Serenity Garden." Id. at ¶ 22.

As explained above, however, this allegation that Defendant Film was involved in the destruction is barred by the collateral estoppel doctrine. Plaintiff offers no other allegations against Film. Because Plaintiff has not stated a claim against Defendant Film upon which relief could be granted, the Court will grant Film's motion for the same reasons as those brought by the Rensselaer Defendants.

### D. Motion to Set Aside Default

---

against these two Defendants for the reasons explained, the Court would dismiss on statute of limitations ground with respect to Defendant McNally and deny the motion with leave to renew with respect to Defendant Roy. Plaintiff would need to provide evidence to support his claim that he did not know Roy's identity until he filed his Second Amended Complaint.

15

Defendants Dale Gero, Steve Jones, Michelle Mason, Robert Patterson, William Scott, and John Stec have filed a motion to set aside the clerk's Entry of Default and for leave to file a late answer. See dkt. # 298. The Defendants are all Massachusetts State Police Officers alleged to have participated in the search of Defendant's property that forms the basis for this suit. Defendants have since filed an answer and a cross-claim. See dkt. # 317. Plaintiff opposes the motion.

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause[.]" FED. R. CIV. P. 55(c). The decision to set aside an entry of default is "left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron Oil Co. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). Still, "because defaults are generally disfavored and reserved for rare occasions, when doubt exists as to whether a default should be . . . vacated, the doubt should be resolved in favor of the defaulting party." Id. at 96.

Here, the moving Defendants failed to answer the Second Amended Complaint and the Court entered Default against them. See dkt. # 287. Defendants relate that they became aware of the instant action in "or about August 2017[.]" See dkt. # 298 at ¶ 2. Defendants' counsel in this matter had represented them in a case Plaintiff filed in New York Supreme Court that made the same allegations. Id. at ¶¶ 2-3. Counsel appeared *pro hac vice* as he was not admitted to the New York bar. Id. at ¶ 3. Assuming he would have to file another petition for *pro hac vice* admission to this Court, defense counsel obtained a certificate of good standing from the Commonwealth of Massachusetts on August 15, 2017. Id. at ¶ 4. Plaintiff did not serve the moving Defendants until June

16

2018.  Id. at ¶ 5.  Upon service, Defendants' counsel sought a sponsoring attorney for *pro hac vice* admission to this Court.  Id. at ¶ 6.  Counsel intended to use the certificate of good standing he had obtained in August 2017, but found that this Court requires that the certificate of good standing be no more than 6 months old.  Id. at ¶ 7.  Counsel and his co-counsel had intended to provide an answer in a timely fashion, but the time for such answer had run before they could obtain the necessary documents.  Id. at ¶ 8.  That failing was not intentional.  Id.  The day after the Court entered default, defense counsel filed their petitions for pro hac vice admission, which the Court granted on August 28, 2018.  Id. at ¶ 11; see dkt. #s 293, 294.

The Court will grant the motion to set aside default and accept the Defendants' answer and crossclaim for filing.  See dkt. # 317.  Recognizing the preference in United States Courts for decisions on the merits of cases, the Court finds that good cause exists for Defedants' failure to answer the Complaint.  First, the delay in filing an answer came inadvertently, based on clerical error and (at worst) a failure to read the Court's rules with enough attention to detail.  Second, Plaintiff delayed nearly a year in serving the Second Ameded Complaint on the Defendants.  Plaintiff's own actions therefore contributed to the delay in this matter.  Third, discovery has not yet commenced in this case, and therefore no undue prejudice and delay exists in permitting Defendants to answer in a case still in its preliminary stages.  Fourth, Defendants, like the other Defendants here named, certainly have viable defenses in this matter.  They should be permitted to pursue them. Defendants' motion will therefore be granted.

**E.     Motion for Default Judgement**

17

Plaintiff, noting the Court's entry of default against the above Defendants, seeks default judgment against them. As the Court has determined to set aside the entry of default against them, Plaintiff's motion is moot. The Court will therefore deny that motion.

**IV.     Conclusion**

The Court here grants the motions of all Defendants who seek dismissal of Plaintiff's Fourth Amendment destruction-of-property claims. Plaintiff's claims which implicate the legality of the search of his property–rather than the implementation of that search–have been dismissed pursuant to the rule in Heck v. Humphrey. Plaintiff may re-plead those claims if subsequent events lift the bar established by that decision. Only in that sense are the claims dismissed without prejudice. Plaintiff may not re-file those claims until the bar is removed. The Court has also previously dismissed claims based on alleged violations of certain state and federal statutes and those may not be replead either.

The Court earlier granted the motions of all Defendants who sought to dismiss those claims against the individual defendants pursuant to the doctrine of collateral estoppel. Those claims were be dismissed with prejudice because better pleading would not cure that problem. The same condition applies to the claims dismissed here.

The Court has also concluded that Plaintiff has failed to state a claim for Monell liability against the various municipal entities and supervisory liability against various officials sued in this case. Normally, the Court would permit repleading of such claims. Plaintiff may have been able to supplement his allegations to include facts making it plausible that his injuries were the result of an official policy and/or custom. The Court will

18

not provide that opportunity in this case, however. First, Plaintiff would be offering a Third Amended Complaint. He has already been provided several opportunities to state a claim for municipal and supervisory liability, and has not done so. Opportunities to amend to better frame a claim cannot be endless. Second, and more important, attempting to re-plead such claims would be pointless. To prove claims against the municipalities in the present posture of the case would require that Plaintiff plead that his right to a reasonable search had been violated pursuant to an official policy or custom. As the Court has explained, however, collateral estoppel bars such claims. Plaintiff had a full and fair opportunity to litigate such claims in state court. Allowing repleading would therefore be pointless.

The Court will therefore grant the Defendants' motions with prejudice with respect to all claims except those the Court has previously determined are subject to the Heck bar. Plaintiff may only re-plead those claims when he can demonstrate the lifting of the Heck bar.

As such, Defendants' motions to dismiss, dkt. #s 228, 240, and 304, are hereby GRANTED. Plaintiff's claims against Defendants Richard Giardino, Sandra Blodgett, Mark Geracitano, Shane Holcomb, Arthur Hyde, Richard McNally, Jami Panichi, Rensselaer County, the Rensselaer County Sherif's Office, Jason Robelotto, William Roy, Patrick Russo, Justin Walread, William Webster, Steve Wohlleer, Derek Pyle, and Corey Film are dismissed with prejudice except for those claims which are subject to the bar in Heck v. Humphrey, 512 U.S. 477 (1994). To the extent that Plaintiff moves for leave to file a Third Amended Complaint to name Thomas Lowrey as Defendant, that motion is DENIED. See dkt. # 245. As explained in the Court's previous decisions, Plaintiff's claims which are

19

subject to that Heck bar may be re-plead, BUT ONLY AT SUCH TIME AS PLAINTIFF CAN DEMONSTRATE THAT HE CAN OVERCOME THAT BAR DUE TO A FAVORABLE DETERMINATION FROM SOME OTHER COURT. Any attempt by Plaintiff to file an Amended Complaint containing any of the claims dismissed by this opinion that are not subject to the Heck bar will be summarily dismissed by the Court. Any attempt to file an Amended Complaint containing the claims subject to the Heck bar that does not contain allegations that the bar has been lifted will be summarily dismissed by the Court. Plaintiff may be subject to sanction for filing such a frivolous action. The motion of Defendants Dale Gero, Steve Jones, Michelle Mason, Robert Patterson, William Scott, and John Stec to set aside default and permit filing of an aswer, dkt. # 298, is hereby GRANTED. The answer and crossclaim entered on the docket on September 28, 2018 is hereby accepted for filing. Plaintiff's motion for default judgment, dkt. # 300, is hereby DENIED.

**IT IS SO ORDERED.**

Dated: October 31, 2018

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge