**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSHUA G. STEGEMANN,**

                                **Plaintiff,**

       **vs.**                                            **1:15-CV-21**


**RENSSELAER COUNTY SHERIFF'S**
**OFFICE, et al.,**

                                **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

### DECISION & ORDER

Before the Court is Defendant Subsurface Informational Surveys, Inc.'s ("Subsurface") motion for summary judgment. See dkt. # 424. Also before the Court is Plaintiff's motion for reconsideration of the Court's order denying his motion for relief from collateral estoppel See dkt. # 425. The parties have briefed the issues and the Court has determined to decide the matter without oral argument.

### I.    BACKGROUND

This case concerns Plaintiff's claims that various state and local entities in New York and Massachusetts violated his constitutional rights while searching his property from April 30, 2013 to May 2, 2013. Plaintiff filed an initial Complaint on January 8, 2015. See dkt. # 1. Since that time, the case has featured an extensive motion practice, an appeal and a remand, Amended Complaints, a number of decisions from this Court granting motions to dismiss from various parties, and additional motion practice. The claims remaining in this case allege that Defendants violated Plaintiff's

right to be free of unreasonable search and seizure when they engaged in a search that was unreasonably destructive.

The Berkshire, Massachusetts, District Attorney's Office retained Defendant Subsurface to survey and locate underground and/or buried contraband, money, and weapons on Plaintiff's property at 138 Losty Road, Stephentown, New York. Defendant Subsurface's Statement of Material Facts ("Subsurface Statement"), dkt. # 424-1, at ¶¶ 1-2.[1] Plaintiff alleges that Subsurface destroyed property located at the home on Losty Road. Id. at ¶ 2. Subsurface appeared on the property on a single date, May 2, 2013. Id. at ¶ 3. Subsurface produced a report of the radar survey the company made of the ground beneath certain parts of the Losty Road property. Id. at ¶¶ 3-4. Subsurface used an SIR System-3000 for subsurface interface radar. Id. at ¶ 4.

Subsurface uses equipment collectively called a GPR system. Id. In that system, a "transmitting/receiving antenna transmits electromagnetic signals into the surface of the ground[.]" Id. at ¶ 5. A graphic recorder and video display unit then detect, amplify and display "reflections of the signal[.]" Id. Moving the antenna slowly across the ground surface produces a radar image. Id. Digging, altering, or changing the surface of the property or land in any way is not necessary to produce that image. Id. The electromagnetic signals permit Subsurface to "detect through different frequencies any anomalies in the ground below" without having to excavate or disturb a property. Id. at ¶ 6. The purpose of the system is to create a below-ground survey

---

[1]Subsurface and Plaintiff both filed statements of material facts as required by Local Rule 7.1. The Court will cite to Subsurface's statement for facts which are undisputed and note where the parties have disputes.

without having to do any more destructive work.  Id.  The parties agree that "Subsurface's ground penetrating radar system can detect anomalies below ground without disturbing the property."  Id.

A contract with the Berkshire District Attorney's Office was the occasion for Subsurface's presence at Losty Road on the date in question.[2]  See Exh. 1 to the Declaration of Beth Provencher, dkt. # 424-3.  The agreement lists as its purpose "Ground Penetrating Radar (GPR) investigation for the location of plastic containers buried approximate 1' down within an area less than 43,560 SF.  Id.  Subsurface promised to "provide a SIR System-3000 and/or SIR-System-2000 with multiple antennas depending upon their application."  Id.  The system's "[r]eal-time data" would "allow the marking of" items "in the field when necessary."  Id.  "A field engineer/supervising technician" would "[operate] this equipment with all the necessary supplies."  Id.  Subsurface would "[deliver]" the "[p]rofile records interpreted in the field"

---

[2]The document provided to the Court is phrased as a "quotation" contained in an email from Beth Provencher, Subsurface's Office Manager to Shelley Crippa.  See dkt. # 424-3, Exh. 1.  The Document contains language that "[i]f this quotation is acceptable to you and you have read and fully understand the terms and conditions, please SIGN, DATE AND RETURN to our office along with required deposition (if applicable) and any additional forms or paper work as soon as possible."  Id. (emphasis in original). Shelley B. Crippo, Director of Fiscal Affairs, on May 2, 2013, signed the document.  Id.  A box on the document indicates that some party faxed the document, as well as emailed it. Id.  "'In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look . . . to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds.'"  Minelli Constr. Co., Inc. v. Volmar Constr., 917 N.Y.S.2d 687, 688, 82 A.D. 3d 720, 721 (2d Dept. 2011) (quoting Brown Bros. Elec. Contrs. v. Beam Constr. Corp., 41 N.Y.2d 397, 399, 361 N.E..2d 999 (1977)).  "'Generally, courts look to the basic elements of the offer and acceptance to determine whether there is an objective meeting of the minds.'"  Id. (quoting Matter of Express Indus. & Term. Corp. v. New York State Dept. of Transp., 93 NY2d 584, 589, 715 N.E.2d 1040 (1999)).  A a reasonable juror could certainly find that an offer and acceptance made this document a valid contract under New York law.

to the District Attorney's "site representative."  Id.  Subsurface estimated that the survey would be completed in less than a day.  Id.  The agreement also provides that the "[c]ustomer will provide all necessary documentation, traffic control, access permits, security and other expenses not specifically covered under this quotation."  Id.

Subsurface produced a report.  See Exh. 2 to Provencher Affidavit, dkt. # 424-3. The report provided the "results of a ground penetrating radar survey performed on Thursday May 3, 2013" at the Losty Road property.  Id. at 1-1.  The survey's "purpose . . . was for the location of suspect underground anomalies associated with buried contraband, money, weapons, etc. within the upper 3.0' of the surface."  Id.  The survey used a "depth setting" of "approximately 5.0' to locate any existing underground storage tanks (UST's [sic]) and/or utilities and unknown anomalies."  Id. at 2-1.  Subsurface used a system made up of a "subsurface interface radar (SIR-3000/2000) computer manufactured by Geophysical Survey Systems, Inc., power supply, graphic recorder, video display unit and transmitting/receiving antenna."  Id.  Together, that equipment makes up a "GPR system."  Id.  The antenna "transmits electromagnetic signals into the subsurface and then detects, amplifies and displays reflections of the signal on a graphic recorder and video display unit."  Id.  Moving the antenna slowly across the area to be surveyed creates "a radar image of the subsurface."  Id.

Subsurface used the GPR in "selected areas associated with the residential property."  Id. at 2-2.  Each area searched was "scanned in a [tight] grid maintaining approximately 2.0'-3.0' minimum spacing."  Id.  Subsurface first surveyed "a slighly wooded area with trees at an approximated 10.0' separation."  Id.  "Scanning was in and around all the surface obstacles showing several 'suspect' anomalies not common in

4

the surrounding geology." Id. "A yellow flag was placed over the area of interest which was subsequently excavated finding no potential evidence." Id. Subsurface also scanned "[t]he former garden" and "walkways showing no unusual anomalies." Id. The company also scanned "the adjacent garage showing one anomaly which turned out to be nothing." Id.

Subsurface contends that the company "was only retained to perform the radar scan." Defendant's Statement at ¶ 7. Plaintiff responds that the evidence Defendant has produced "do not establish the absence of a genuine dispute of material fact." Plaintiff's Response at ¶ 7. Plaintiff does not produce any evidence to dispute that Defendant's agreement with the District Attorney involved only a survey, but points out that the report indicates that the area surveyed "was subsequently excavated finding no potential evidence." Id. (quoting the Subsurface Report). He also argues that the survey device that Subsurface used "is depicted on excavated soil" from the spot "where the Serenity Garden, Grape Arbor (Arched Trellis), outdoor lighting, restored antique subway benches, ornamental pine trees, coi [sic] ponds, pea stone, quartz crystal, fountains, Japanese Maples, etc., were scraped from the earth and removed by Subsurface and/or the police defendants." Id. The pictures purport to represent the condition when Subsurface arrived, but Plaintiff contends that they cannot do so, since they show conditions that must have existed after the excavation. Id. He claims that the pictures that Defendant includes indicate that Subsurface participated in the excavation of the property. Id. He also claims that the report indicates that Subsurface did the excavation. Id.

Subsurface, referencing the agreement to survey, alleges that the contract did

not contain any agreement for Subsurface to excavate the property.  Defendant's

Statement at ¶ 8.  Plaintiff contends that evidence indicates that the purpose of the

contract was to find "the location of plastic containers buried approximately 1' down" on

the property, that Subsurface's project manager was John Stec, a Massachusetts State

Police Officer, that the District Attorney's Office was to provide traffic controls, access

permits, and pay additional expenses, and that Subsurface disclaimed any liability for

damage or service interruption caused by its work and this evidence indicates that "the

contract specifically delineates that Subsurface's purpose in this case is to investigate

for buried evidence at the direction of MSP John Stec (Subsurface's co-defendant

herein) and that MSP John Stec will provide manpower and excavation as required to

complete Subsurface's contract."  Plaintiff's Response at ¶ 8.  Plaintiff further contends

that the "excavations were part of Subsurface's contract and it admits directing such

excavations" by pointing towards areas to be examined in its report.  Id.  Plaintiff further

claims that Stec provided the manpower and equipment for such excavations pursuant

to the contract.  Id.  Plaintiff also uses this evidence to allege that Stec used the State

Police to assist Subsurface to carry out the excavation and to dispute Subsurface's

claim that the company lacked the equipment or staff to carry out excavations.

Compare Plaintiff's Statement at ¶ 9 with Defendant's Statement at ¶ 9.

Subsurface asserts that the company "was not paid to excavate any part of the

property."  Defendant's Statement at ¶ 10.  Plaintiff disputes this claim by alleging that

"Subsurface was paid to conduct an underground 'investigation for' buried evidence and

admits directing excavations in furtherance of its investigation to confirm the existence

6

of evidence underground." Plaintiff's Response at ¶ 10. Plaintiff also disputes Subsurface's claim that all of its work occurred above ground, since Subsurface "admits directing excavations of the Pine Tree Grove and garage/barn in furtherance of its investigation to gather evidence underground." Defendant's Statement at ¶ 11; Plaintiff's Response at ¶ 11. The parties dispute whether Subsurface caused any damage to the property. Compare Defendant's Statement at ¶ 12 with Defendant's Statement at ¶ 12.

Plaintiff filed his first Complaint and motion for leave to proceed in forma pauperis in this matter on January 8, 2015. See dkt. # 1. After a great deal of motions practice, a single federal issue remained to be considered by the Court: whether the search of Plaintiff's property violated his Fourth Amendment rights because the parties who executed the search engaged in "'[e]xcessive or unnecessary destruction of property in the course of a search,'" even though their "'entry itself [was] lawful and the fruits of the search [were] not subject to suppression.'" United States v. Howard, 489 F.3d 484, 497 (2d Cir. 2007) (quoting United States v. Ramirez, 523 U.S. 65, 71 (1998)). Plaintiff also raised state-law claims against Subsurface. After service on Subsurface and discovery, Subsurface filed the instant motion for summary judgment. The parties then briefed the issues, bringing the case to its present posture.

## II.   LEGAL STANDARD

Defendant seeks summary judgment on all of Plaintiff's claims against Subsurface. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary

judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III.   ANALYSIS

The Court will first address Defendant's motion for summary judgment and then resolve Plaintiff's motion for reconsideration.

### A.   Summary Judgment

Defendant seeks summary judgment on each of Plaintiff's claims against Subsurface.  The Court will address each claim in turn.

### i.    Fourth Amendment Claim

Defendant first argues that Plaintiff has not produced evidence to support a Section 1983 claim against Subsurface.

### a.    State Action

Defendant argues that Plaintiff has not demonstrated that Subsurface engaged in the sort of state action that could make the company liable under 42 U.S.C. § 1983. Plaintiff responds that the evidence indicates that Subsurface acted in concert with John Stec to engage in an unreasonable search of his property.  He contends both that the State Police compelled Subsurface to participate in the unreasonable search, and that the evidence indicates that Subsurface actually engaged in the unreasonable search.

"To state a § 1983 claim, a plaintiff must establish that the defendant deprived him of a federal or constitutional right while acting under the color of state law."  Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011).  No action exists for "'merely private conduct, no matter how discriminatory or wrongful'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (quoting Blum v. Yaretsky, 334 U.S. 1, 13 (1948)).   To establish state action, plaintiffs must show that the person who caused their constitutional deprivation "'may fairly be said to be a state actor.'"  Grogan v. Blooming Grove Volunteer Ambulance Corps, 768 F.3d 259, 264 (2d Cir. 2014) (quoting Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 111 (2d Cir. 2003)).  State action occurs when "the 'allegedly unconstitutional conduct is fairly attributable to the State.'"  Id. (quoting Sullivan, 526 U.S. at 50).  When a plaintiff contends that a private actor violated his rights, the plaintiff proves state action "by demonstrating that 'there is such

a close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  Id. (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)).

To determine whether the behavior can be attributed to the state, the Court must "[identify] 'the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity.'" Id. (quoting Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012)).  In making this determination, Courts employ a number of factors, including "[t]hree main tests[.]"  Fabrikant, 691 F.3d at 207.  Those tests are:

> (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the state ('the public function test')

Id. (quoting Syblaski v. Indep. Grp. Home Living Program, 546 F.3d 255, 257 (2d Cir. 2008)).

Here, the Defendant entered into a contract to survey certain areas by ground radar as part of a government search of Plaintiff's property.  "The government enters into contracts for all kinds of goods and services without converting its contractors into state actors; architects designing federal buidlings or engineers building bridges do not thereby become government actors."  Cooper v. United States Postal Serv., 577 F.3d 479, 492 (2d Cir. 2009).  There mere "fact that 'a private entity performs a function which serves the public does not make its acts state action.'"  Id (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982)).  The existence of a contract does not by itself "render all of the contractor's conduct state action[.]"  Id.  The Court must therefore

10

"explore whether and to what extent the" contracted party "is a 'state actor' while performing its contractual tasks." Id.

The parties dispute whether Subsurface's involvement in the search constitutes state action. Defendant's position is that Subsurface simply carried out the terms of a contract, and that state action does not occur in such situations. Plaintiff argues that Subsurface acted as an agent of the state in carrying out the radar search, and therefore is responsible for any violations of his Fourth Amendment rights because Subsurface acted jointly with the State. In addition, Plaintiff claims that the evidence indicates that Subsurface actually performed the offending destructive excavation. Plaintiff therefore appears to argue that Defendant acted pursuant to some portion of the state-action test, and in particular by acting jointly with the state or when the Defendant was delegated a public function. The answer to this question is not clear cut, since here Subsurface assisted police officials to carry out a search pursuant to a warrant, which is surely an exclusive action and function of the State. The case law that Defendant cites regarding contractors operating according to an agreement with the State does not include searches undertaken pursuant to a warrant. Moreover, neither side has cited to a case where the complaint does not concern the fact of the warrant, but instead the way that officers executed a valid warrant. The answer to the question of whether the search itself was state action is therefore a complicated one.

In the end, however, the Court need not answer this question because the Court can find that Subsurface is not liable for a simpler reason. "To demonstrate state action, a plaintiff must establish both that [his] 'alleged constitutional deprivation [was] caused by the exercise of some right or privilege created by the State or by a rule of

11

conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation [is] a person who may fairly be said to be a state actor.'" Grogran, 768 F.3d at 264 (2d Cir. 2014) (quoting Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 111 (2d Cir. 2003) (internal quotations omitted) (emphasis in original)).  Here, the alleged constitutional deprivation was not the fact of the search, but the way that officers executed that part of the search.  Plaintiff contends that the search was unreasonable because of the destruction the search caused.  Defendant Subsurface must have participated in that search to be liable for any deprivations of his constitutional rights that Plaintiff suffered.  The evidence is clear that the allegedly illegal part of the search did not involve Subsurface, which had no role in how other parties executed the search.

Beth Provencher, who was employed at Subsurface at the time in question, submitted an affidavit.  See dkt. # 424-3.  She relates that Subsurface was a private Massachusetts company at the time of the search.  Id. at ¶ 1.  Provencher "was present and employed" at Subsurface when the company agreed to do the radar survey.  Id. at ¶ 2.  She relates that the agreement that Subsurface signed with the Berkshire District Attorney's Office "did not include any excavation work."  Id. at ¶ 3.  "Subsurface was not in the business of excavation" and "did not have the equipment or manpower to excavate."  Id.  Subsurface worked "to locate items beneath the ground without the need to excavate."  Id.  The work that Subsurface did on May 2, 2013 did not involve excavation and the company did not have the means to do such work.  Id. at ¶ 4.  Subsurface's work all occurred on the surface and the company was not involved in any excavation.  Id. at ¶¶ 5-7.

12

Plaintiff challenges Provencher's claims that Subsurface was not involved in any excavation by pointing to terms of the parties' contract, photographs from the scene, and statements in the report that Subsurface issued.  He points to language in the report that indicates that excavation occurred after the ground radar survey identified suspicious areas.  That language, cited above, however, does not indicate that Subsurface performed the search.  Similarly, he argues that pictures of the trolley used to carry the radar, sitting on ground he claims was disturbed, indicate that the pictures were taken after an excavation because property that should have been in the picture was no longer visible.  That evidence does not in any way contradict Provencher's sworn claims that Subsurface did not do any excavation, nor has Plaintiff produced any evidence that Subsurface had any means to do any excavating or personnel who could do so.  Indeed, if excavation had occurred before the survey, such excavation would also be evidence demonstrating that Subsurface played no role in the allegedly offending activity.  Plaintiff simply offers speculation, which cannot survive a motion for summary judgment.

Plaintiff also asserts that the contract indicates that Subsurface would participate in the excavation because John Stec was listed as the project manager for the survey, the contract provided that the "customer" would obtain documentation, permits, traffic control and other expenses to allow the survey to occur, and the contract contained an indemnity provision favoring Subsurface. See Plaintiff's Response at ¶ 8.  Plaintiff asserts that Stec's presence and the contract's promise that the District Attorney's office would assume expenses demonstrates that "excavations were part of Subsurface's contract" and that Subsurface would provide the equipment and personnel to dig.  Id.

13

No reasonable juror could read the provisions in the agreement between the District Attorney's Office and Subsurface in the way that Plaintiff suggests.  The agreement clearly defines the scope and limit of Subsurface's work, and the means that the company would use to do that job.  Nothing in that contract indicates that Subsurface would do any excavating, and promises by the "customer" to provide access to the property and other means of carrying out the search were made by the District Attorney, not Subsurface.  The fact that Stec represented Subsurface in the agreement does not expand Subsurface's role in the search to everything that Stec did.  Subsurface had a limited role, and no evidence exists by which a reasonable juror could conclude that Subsurface actually performed any excavating.[3]

Defendant did not participate in the portion of the search that allegedly gave rise to Plaintiff's constitutional claims; Defendant simply identified an area to be searched and left.  Defendant cannot be responsible for the way that officers searched the property.  Defendant could not control how officers used the information Subsurface provided, and no evidence indicates that Defendant purposely provided officers with inaccurate or damaging information.  The question of whether the warrant to authorize

_____

[3]Plaintiff also contends that Subsurface violated his rights by searching the property on the basis of Defendant's contract with the Berkshire County District Attorney's Office.  Plaintiff claims that the Berkshire County District Attorney was not named in the warrant and Stec was not authorized by the warrant to engage in any such activity.  Plaintiff claims that this search by Subsurface thus violated his Fourth Amendment rights because no warrant authorized that activity.  As explained, however, the issue before the Court is not whether the search of Plaintiff's property violated the Fourth Amendment because the warrant was improper.  The issue before the Court is whether the search was unreasonably destructive and thus violated the Plaintiff's rights.  Whether Subsurface knew of the warrant or whether the warrant specifically named Subsurface is not relevant to this question.

the search of Plaintiff's property violated his rights has already been resolved in favor of all the Defendants.  The only question remaining is how officers executed the search. Since no reasonable juror could find that Defendant participated in that portion of the search, no reasonable juror could conclude that Defendant was responsible for the alleged deprivation.  The state action that gave rise to Plaintiff's claim did not involve the Defendant and the Court will therefore grant the Defendant's motion in this respect.

### ii.    Conspiracy to Deprive Plaintiff of his Constitutional Rights

Defendant next argues that the Court should grant subsurface judgment on any claim that Subsurface conspired with the other defendants to violate Plaintiff's constitutional rights.  Proof of a conspiracy under Section 1983 requires a plaintiff to demonstrate: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).   Plaintiff must show that the Defendants had a "'meeting of the minds' to conspire against" him.  McGee v. Dunn, 672 Fed. Appx. 115, 116 (2d Cir. 2017) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)). A party can prove a "common scheme" through circumstantial evidence.  Ricciuti v. New York Transit Auth., 124 F.3d 123 ,131 (2d Cir. 1997).

Plaintiff does not address the conspiracy issue directly in his briefing, but his arguments could suggest he contests this issue as well.[4]  The evidence explained

---

[4]In the summary judgment context, "the failure to respond to the motion does not alone discharge the burdens imposed on a moving party."  Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 246 (2d Cir. 2004).  The moving party must show both "the absence of a genuine issue of material fact" and "'that he is entitled to judgment as

above indicates only that Subsurface signed a contract to do a radar survey of the

property for which police had obtained a search warrant.  While Plaintiff suggests that

Subsurface worked with the Berkshire District Attorney's Office and Stec in excavating

the property, the evidence to which he points for that argument would not permit a

reasonable juror to reach that conclusion.  The evidence indicates that Subsurface

signed a contract with the District Attorney's Office to survey the property, performed

that survey, and turned the information over to the District Attorney.  No evidence

indicates that Subsurface performed any excavation, directed how any of the excavation

was performed, or played any role in the decisions that the searchers made about how

to perform the search.  No evidence, circumstantial or otherwise, suggests that

Subsurface and any other person had a meeting of the minds about how the search

would be executed.  Since the alleged destructiveness of the search is the only

constitutional question here, no reasonable juror could find that Subsurface participated

in a conspiracy with another person to engage in a destructive search of the property,

and the Court will grant the motion in this respect as well.

### iii.    State Law Claims

Defendant next argues that no evidence indicates that Subsurface engaged in

any negligence in surveying the property pursuant to the contract.  Defendant argues

---

a matter of law.'"  Id. (quoting FED. R. CIV. P. 56(c)).  The Court accepts properly
supported material facts as true but "the moving party must still establish that the
undisputed facts entitle him to 'a judgment as a matter of law[.]'  Id.  Thus a court
"considering a motion for summary judgment must review the motion, even if
unopposed, and determine from what it has before it whether the moving party is
entitled to summary judgment as a matter of law.'"  Id. (quoting Custer v. Pan Am. Life
Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)).

that Plaintiff cannot prevail on any negligence claim because Subsurface owed Plaintiff

no duty pursuant to its contract with the District Attorney's Office. Plaintiff does not

address this issue in his briefing.

In New York, a plaintiff offers prima facie evidence of negligence when he shows

that "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant

breached that duty; and (3) the plaintiff suffered damage as a proximate result."

Williams v. Utica Coll. of Syracuse Univ., 453 F.3d 112,116 (2d Cir. 2006).  Defendant

here raises the question of duty, citing to case law in New York that establishes that

"ordinarily, breach of a contractual obligation will not be sufficient in and of itself to

impose tort liability to noncontracting third parties upon the promisor."  Church v.

Callanan Indus., 99 N.Y.2d 104, 111 (N.Y. 2002).  Courts in New York have found,

however, that duty can arise to a non-contracting third party under some circumstances.

Id.  These courts find three exceptions to the rule: "'(1) where the contracting party, in

failing to exercise reasonable care in the performance of [its] duties, launches a force or

instrument of harm; (2) where the plaintiff detrimentally relies on the continued

performance of the contracting party's duties; and (3) where the contracting party has

entirely displaced the other party's duty to maintain the premises safely.'" Morales v.

Digesare Mech. Inc., 176 A.D.3d 1442, 1442-1443 (3d Dept. 2019) (quoting Stiver v.

Good & Fair Carting & Moving, Inc., 9 N.Y.3d 253, 257 (N.Y. 2007)).

The Court agrees with the Defendant that Subsurface owed no duty to the

Plaintiff and cannot be liable to the Plaintiff in negligence.  No evidence indicates either

detrimental reliance or that Subsurface had assumed a duty to maintain the premises

safely.  Plaintiff makes no such claims, and the limited nature of Defendant's contractual

17

duties–to execute a survey of the property that did not involve any digging or disturbance of the land–is not evidence that Defendant's contract created a duty to Plaintiff.  As to the first exception, no evidence indicates that Subsurface's conduct "creat[ed] or exacerbate[d] an unsafe condition," and Subsurface therefore did not fail to exercise reasonable care or launch a force or instrument of harm.  Medinas v. MILT Holdings, LLC, 131 A.D.3d 121, 126 (1st Dept. 2015).  No reasonable juror could find that Subsurface owed Plaintiff a duty, and he could not prevail on any negligence claim. The Court will grant the motion in this respect as well.

### B.    Reconsideration

Plaintiff has moved for reconsideration of the Court's Order denying his request to "withdraw the benefit of collateral estoppel" from certain defendants, dkt. # 423.  In that Order, the Court construed the request as a motion for reconsideration of the Court's decision granting various motions to dismiss the case.  The Court had earlier concluded that collateral estoppel barred Plaintiff's claims against certain defendants because the New York Court of Claims found that the search of his property did not violate his rights.

Plaintiff seeks reconsideration of the Court's Order denying his motion for reconsideration.  When a party files a motion for reconsideration, "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995).  Such a motion is "not a vehicle for relitigating old issues, presenting the case

under new theories, securing a rehearing on the merits, or otherwise taking 'a second bite at the apple[.]'" Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 41 (2d Cir. 2012) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)).

Plaintiff here claims to include evidence that he did not submit in relation to his first motion for reconsideration on this issue.  He claims that he did not include this evidence in connection with his first motion, and instead relied only on a declaration "because facts determinative of" motions to dismiss (the motion the Court originally granted) "are always viewed in the light most favorable to the plaintiff."  He includes documents he purports are new evidence which he did not include in the previous motion.  That evidence includes answers to interrogatories from Subsurface, copies of Subsurface's report, and pictures of his property, which he claims demonstrate unreasonable destruction that occurred before Subsurface arrived.

The Court will deny the motion for reconsideration.  The Plaintiff made all of these arguments in support of his motion for reconsideration, and he referenced the documents he now includes in that motion.  He could have provided the Court with the documents he now references at that point.  Indeed, his briefing on the motion included an excerpt from Subsurface's interrogatory answers, demonstrating that he possessed the information at the time he filed his motion.  See dkt. # 417.  In any case, as the Court explained previously, the information that Plaintiff cites in support of his motion does not provide any reason to reconsider the Court's earlier decision.  The evidence in question does not demonstrate that the Court erred in concluding that collateral estoppel barred claims in this matter.

**IV.    CONCLUSION**

19

For the reasons stated above, Defendant Subsurface Information Surveys, Inc.'s motion for summary judgment, dkt. # 424, is hereby GRANTED.  Plaintiff's motion for reconsideration, dkt. # 425, is hereby DENIED.

**IT IS SO ORDERED.**

Dated: September 15, 2020

Thomas J. McAvoy
Senior, U.S. District Judge